UNITED FOOD & COMMERCIAL WORKERS UNION, LOCAL 1119, AFL–CIO, Plaintiff/Counter-Defendant/Appellee,

v.

UNITED MARKETS, INC., Defendant/Counter-Plaintiff/Appellant.

No. 84–2647.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 15, 1985.

Decided March 18, 1986.

Bunch & Andrews, Thornton C. Bunch, Jr., Russell: Richeda, San Francisco, Cal., for plaintiff/counter-defendant/appellee.

McLaughlin & Irvin, Patrick W. Jordan, David Miller, San Francisco, Cal., for defendant/counter-plaintiff/appellant.

Before SNEED, KENNEDY, and BOO-CHEVER, Circuit Judges.

SNEED, Circuit Judge:

United Markets, Inc., appeals from the district court's order vacating an arbitration award and denying United the use of the General Clerk classification in its San Anselmo store. We affirm the district court.

## I.

### FACTS AND PROCEEDINGS BELOW

Appellant United Markets (United) sells groceries and related products in San Anselmo and San Rafael. Appellee United Food & Commercial Workers Union (Union) represents the retail clerks in the two stores. In a memorandum agreement due to expire on February 28, 1986, the two parties agreed that

1. If the Employer does not utilize the classification of General Merchandise or non-food clerks then the Employer shall be entitled to a General Clerk classification under the following conditions:

a) There may not be more than two (2) General Clerks on duty at any given time.

. . . .

f) In the event the Employer fails to observe the terms of this section in any respect, the Union shall notify the Employer in writing of such violation and it shall be corrected. Following such notice if the Employer again violates the terms hereof and it is so determined by the Adjustment Board or Arbitrator, then in such event, the Employer shall *no longer* be entitled to a General Clerk classification, and the food clerk rates shall thereafter become applicable to all General Clerks [sic] work in the store where the violation occurred.

(Italics added.) The memorandum agreement also provided that the arbitration provisions of the main Food Industry Agreement would "remain unchanged." Section 18.6 of the Food Industry Agreement stated that "[t]he arbitrator shall not have the right to alter, amend, delete or add to any of the terms of this agreement."

On December 7 and December 21, 1983, United violated the memorandum agreement at the San Anselmo store by using three General Clerks at one time (the overlap). Each overlap lasted approximately two hours. United attempted to make amends by paying the Senior General Clerk at the second step of the Apprentice Food Clerk rate for the duration of the overlaps. The Union, dissatisfied with this response, pursued its grievance, and the matter eventually led to arbitration. The arbitrator found that United had violated the agreement on those two dates and ordered it to pay all employees in the General Clerk classification the difference between their regular pay rate and the higher rate earned by Apprentice Food Clerks for all work performed between January 18 and July 1, 1984. He further provided that a third violation would cause United to lose the General Clerk classification for the duration of the agreement.

The Union remained dissatisfied. Its attorney wrote to the arbitrator and asked him to correct three alleged defects of the award. These were, first, that the monetary penalty exceeded the scope of the agreement, second, that the arbitrator changed the agreement to provide that the second violation would not entail the loss of the General Clerk classification, and third, that the award appeared to affect both stores and not just the store in which the violation occurred. In response, the arbitrator agreed to specify that the award only applied to the San Anselmo store but refused to alter the balance of the award.

The Union then petitioned the district court to vacate the arbitrator's award; United filed a cross-complaint seeking sum-

mary judgment confirming the award. The district court vacated the award, finding that the arbitrator had "exceeded his authority under applicable law and violated express contractual limits on his authority." The court further ruled that United could no longer use the General Clerk classification, and it denied United's motion for summary judgment. United appeals from both the vacation of the arbitrator's award and the denial of the General Clerk classification.

## II.

### THE ARBITRATOR'S AWARD DID NOT DRAW ITS ESSENCE FROM THE AGREEMENT

We begin by observing that the arbitrator construed the two overlaps as "violations." Had he not done so, we would have a different case. Moreover, the parties do not argue that the arbitrator found the overlaps to be *de minimis* violations, thus not "true" violations at all. Instead, they concede that the arbitrator found that two violations occurred. They quarrel about the interpretation of the italicized words "no longer," as found in the memorandum agreement. We accept this framework of the dispute.

Ordinarily, an arbitrator's award is entitled to great deference. *See United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 596, 80 S.Ct. 1358, 1360, 4 L.Ed.2d 1424 (1960); *Edward Hines Lumber Co. of Oregon v. Lumber and Sawmill Workers Local No. 2588*, 764 F.2d 631, 634 (9th Cir.1985). As long as the arbitrator's award "draws its essence from the collective bargaining agreement," *Enterprise Wheel*, 363 U.S. at 597, 80 S.Ct. at 1361, and "represents a plausible interpretation of the contract," *George Day Construction Co. v. United Brotherhood of Carpenters*, 722 F.2d 1471, 1477 (9th Cir.1984), a court is bound to enforce it, even if the court would have adjudicated the dispute differently. *See Edward Hines*, 764 F.2d at 634 ("[C]ourts should

not reexamine the merits of the underlying grievances, nor should they overrule an arbitration because they disagree with the arbitrator's interpretation of the contract." (citation omitted)). If, however, the arbitrator's interpretation violates the terms of the agreement, the court cannot enforce the award. *Enterprise Wheel*, 363 U.S. at 597, 80 S.Ct. at 1361; *Federated Employers of Nevada, Inc. v. Teamsters Local No. 631*, 600 F.2d 1263, 1265 (9th Cir.1979).[1]

United, relying on the great deference normally accorded arbitrators' awards, argues that the district court should not have vacated the award in question unless the award "is *clearly* outside of or contrary to express provisions of the collective bargaining agreement." Brief for Appellant at 9 (emphasis in original). By denying it the advantages of the General Clerk classification from January 18 to July 1, 1984, United argues, the arbitrator followed the provisions of the agreement and did not stray outside its terms. The fact that the duration of the penalty was not commensurate with the duration of the agreement does not alter this conclusion. *Id.* at 9–13.

The Union, however, relying on the phrase "no longer," responds that "no longer" means until the agreement expires, and that Section 1(f) of the memorandum agreement must control. United, in response, contends that "[n]othing in the Agreement specifically requires that use of the general clerk classification be withdrawn for a particular period of time," Brief for Appellant at 10, and that the arbitrator was entitled to shape the remedy to comport with the alleged inadvertence of the violations.

■ We reject United's claim. "No" means "not any," *Webster's Third International Dictionary* 1532 (16th ed. 1971), and "no longer" means "not any longer." We do not decide whether the phrase "no longer" extends the provisions of the agreement beyond February 28, 1986. Used in their ordinary sense, the words "no longer ... entitled to a General Clerk clas-

---

[1] Courts will also refuse to enforce an arbitrator's award that violates the law or public policy. *George Day Construction Co. v. United Brotherhood of Carpenters*, 722 F.2d 1471, 1477 (9th Cir.1984).

sification" connote a denial of that classification until the agreement expires.[2] By denying United the financial advantages of the General Clerk classification for five and a half months, instead of denying United the classification for the rest of the time that the agreement was in effect, the arbitrator's award did not draw its essence from the agreement.

■ Yet another justification exists for this conclusion. The memorandum agreement calls for loss of the General Clerk classification upon the *second* violation. The arbitrator ruled that, due to the second violation, United could not reap the benefits of the pay differential in the employee classifications from January 18 to July 1, 1984. He did, however, give United a "free bite" by providing that no permanent loss of the General Clerk classification would ensue until the *third* violation. This resolution "add[ed] to" the terms of the agreement—an effect forbidden by Section 18.6 of the main agreement. This direct conflict with the language of the agreement renders the arbitrator's interpretation implausible. *See Federated Employers of Nevada*, 600 F.2d at 1265 ("The violation of an express and explicit restriction on the arbitrator's power cannot be a plausible interpretation.") The district court properly vacated the arbitrator's award.

## III.

## THE DISTRICT COURT DID NOT ERR IN CORRECTING THE ARBITRATOR'S AWARD

■ We acknowledge that the district court could have remanded the case to the arbitrator in order to have him fashion the appropriate remedy. Its failure to do so, however, is not error. Given the clear language of the agreement and the arbitrator's finding that United had twice violated the provision concerning the General Clerk classification, remand was unnecessary. *See American Postal Workers v. United States Postal Service*, 682 F.2d 1280, 1285 (9th Cir.1982) (court does not remand to arbitrator because "remand would be futile") *cert. denied*, 459 U.S. 1200, 103 S.Ct. 1183, 75 L.Ed.2d 431 (1983); *cf. Dogherra v. Safeway Stores, Inc.*, 679 F.2d 1293, 1297 (9th Cir.) (in an arbitration case, Ninth Circuit considers remand to district court unnecessary where "remand would serve no purpose") *cert. denied*, 459 U.S. 990, 103 S.Ct. 346, 74 L.Ed.2d 386 (1982). The court simply applied the arbitrator's finding that United had violated the agreement twice, applied the language of the agreement, and ordered United not to use the General Clerk classification any more. It did not err in so doing.

We affirm the district court in all respects.

AFFIRMED.

KENNEDY, Circuit Judge, dissenting:

This case presents a classic example of the role an arbitrator should, indeed must, assume when abstract provisions of a collective bargaining agreement come to bear upon the realities of the industrial process. It is unfortunate that my respected colleagues do not seize upon the opportunity

---

**2.** Ordinary words in a contract are normally accorded their usual meaning unless the parties indicate that they intended the words to have a different meaning. 17A C.J.S. *Contracts* § 301 (1963); *see New York Rapid Transit Corp. v. City of New York*, 303 U.S. 573, 592, 58 S.Ct. 721, 730, 82 L.Ed. 1024 (1938). Had the parties wished to indicate that "no longer" had a special meaning, they could have done so. We must take the words "no longer" as having been intended to be used in their usual sense. "No longer" connotes a permanent change in a condition or status. *Cf.* W. Burton, *Legal Thesaurus* 844 (1980) (defining, for example, "no longer in perfect condition" as "marred," "no longer in use" as "obsolete," and "no longer living" as "dead, deceased, defunct"); *United States v. Rabb*, 680 F.2d 294, 296 (3d Cir.) ("[W]e *no longer* follow a rigid approach to semantic statutory construction, lest we construe a statute within its letter, but beyond Congress' intent" (emphasis added)) *cert. denied*, 459 U.S. 873, 103 S.Ct. 162, 74 L.Ed.2d 135 (1982); *Taylor v. Tulsa Tribune Co.*, 136 F.2d 981, 983 (10th Cir.1943) ("... [A]ny acts or words which ... are equivalent to a declaration that the services [of an employee] will *no longer* be required or accepted ... are sufficient to effect a discharge." (citations omitted and emphasis added)).

to demonstrate the arbitration system working at its best, rather than concluding the arbitrator departed so far from the norm that reversal is required.

It is apparent the arbitrator found no substantial breach, no substantial violation, of the contract and designed a remedy accordingly. The workers in question were made whole from a monetary standpoint, the company being penalized for its inadvertent error; and the structure of the wage agreement that had been bargained for was left in place, with a warning to the company that it would surrender its advantages if a subsequent violation occurred. The court substitutes its own judgment and finds the company forfeited the wage classification when by inadvertence a two-hour overlap occurred but twice, once when a crew was called in early and once because of a scheduling error. That is a wooden interpretation of the contract.. Even courts, much less arbitrators, are supposed to avoid such results, not embrace them. I doubt that an inadvertent overlap of fifteen minutes, or five minutes, would prevent the decision of the arbitrator to stand, and it is for the arbitrator, not for us, to say that two hours falls on the same side of the line.

In his decision, Arbitrator Sam Kagel expressly considered both the inadvertence of the violations and appellant's good-faith attempts to cure its oversight once it was notified of the violations. In effect, Arbitrator Kagel treated the two breaches as immaterial, and fashioned the remedy accordingly. In doing so, he engaged in precisely the kind of arbitral decisionmaking sanctioned by the Supreme Court in *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960): "When an arbitrator is commissioned to interpret and apply the collective bargaining agreement, he is to bring his informed judgment to bear in order to reach a fair solution of a problem. This is especially true when it comes to formulating remedies. There the need is for flexibility in meeting a wide variety of situations." *Id.* at 597, 80 S.Ct. at 1361.

The majority is quite right to point out that on appeal the attorneys for the company did not make the foregoing argument, resting instead on an implausible construction of the words "no longer." This aspect of the case, I concede, is troubling. If the appellant's argument were all the court had before it, I would agree with its conclusion; but I submit the arbitrator's decision must necessarily be read as a finding that the two incidents did not, in all the circumstances of the case, constitute that sort of event that would work automatic forfeiture of pay classifications in question.

Although the majority correctly states the rule of deference to arbitrators' decisions, it does not abide by the principle. I would reverse the district court and reinstate the decision of the arbitrator.