**SFIC PROPERTIES, INC.,**
Plaintiff–Appellee,

v.

**INTERNATIONAL ASSOCIATION OF MACHINISTS & AEROSPACE WORK-ERS, DISTRICT LODGE 94, LOCAL LODGE 311, aka: IAMAWD,** Defendant–Appellant.

No. 95–55139.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 5, 1996.

Decided Dec. 27, 1996.

Michele S. Ahrens, Tredway, Brandmeyer & Lumsdaine, Downey, CA, for plaintiff-appellee.

Herbert M. Ansell and Geoffrey D. Chin, Los Angeles, CA, for defendant-appellant.

Before: MELVIN BRUNETTI and PAMELA ANN RYMER, Circuit Judges, and JACK E. TANNER,* District Judge.

Opinion by Judge BRUNETTI; Dissent by Judge RYMER.

BRUNETTI, Circuit Judge:

An arbitrator ruled in favor of SFIC Properties, Inc., employee Julio Rodriguez and ordered his reinstatement with back pay. The district court granted summary judgment to SFIC and vacated the award, concluding that the arbitrator erred in finding an implied just cause requirement. Rodriguez' union, the International Association of Machinists & Aerospace Workers, District Lodge 94, appealed. We review the district court's award of summary judgment *de novo*, *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir.1995), and we reverse.

---

* Hon. Jack E. Tanner, Senior United States District Judge for the Western District of Washing-

## I.

SFIC terminated employee Julio Rodriguez purportedly for sexually harassing a female employee and other workplace violations. After inferring a just cause requirement from the collective bargaining agreement ("CBA"), an arbitrator ordered Rodriguez' reinstatement based on a finding that the company had failed to provide Rodriguez with any notice of his wrongdoing and an opportunity to correct his behavior. The arbitrator found that Rodriguez was never apprised of many of the reasons for his dismissal at the time he was dismissed. The arbitrator inferred a just cause requirement in the CBA from the presumption that modern CBA's imply a just cause requirement and the seniority clause which provides that seniority is lost when, inter alia, an employee is dismissed for cause. The arbitrator concluded that the CBA's provision that management would have the exclusive right to discharge employee did not refute the implication of a just cause requirement.

The district court vacated the arbitrator's award. The court relied both on Ninth Circuit non-arbitration case law suggesting that it is inappropriate to infer a just cause requirement and the latitude afforded management by the CBA. The court concluded that because the award did not draw its essence from the collective bargaining agreement the arbitrator exceeded his authority in imposing a just cause requirement.

## II.

"The scope of review of an arbitrator's decision in a labor dispute is extremely narrow." *Federated Dep't Stores v. United Food & Commercial Workers Union, Local 1442*, 901 F.2d 1494, 1496 (9th Cir.1990). Arbitration awards are upheld so long as they represent a "plausible interpretation of the contract." *Phoenix Newspapers, Inc. v. Phoenix Mailers Union Local 752*, 989 F.2d 1077, 1080 (9th Cir.1993). "A reviewing

ton, sitting by designation.

court is bound-under all except the most limited circumstances-to defer to the decision of [the arbitrator], even if ... that ... decision finds the facts and states the law erroneously." *Phoenix,* 989 F.2d at 1080 (quoting *Stead Motors v. Automotive Machinists Lodge No. 1173,* 886 F.2d 1200, 1204 (9th Cir.1989), *cert. denied,* 495 U.S. 946, 110 S.Ct. 2205, 109 L.Ed.2d 531 (1990)).

■ This court has identified three exceptions to the general deference to an arbitrator's award: (1) when the award does not "draw its essence from the collective bargaining agreement"; (2) when the arbitrator exceeds the scope of the issues submitted; and (3) when the award runs counter to public policy. *Federated,* 901 F.2d at 1496. The district court concluded that the arbitrator's award in favor of Rodriguez did not draw its essence from the CBA and that therefore the arbitrator exceed his authority in issuing the award.

■ An award draws its essence from the CBA when it is based on language in the CBA. *See Stead,* 886 F.2d at 1205 n. 6 ("This term [fails to draw its essence] is reserved for those egregious cases in which a court determines that the arbitrator's award ignored the plain language of the contract, that he manifestly disregarded the contours of the bargain expressed in outline by the collective bargaining agreement."); *Jasper Cabinet Co. v. United Steelworkers of America, AFL–CIO–CLC, Upholstery and Allied Division,* 77 F.3d 1025, 1028 (7th Cir.1996) ("We will uphold an arbitrator's award based upon a misreading of the contract so long as the arbitrator's interpretation is derived from the language of the contract."); *Sullivan v. Lemoncello,* 36 F.3d 676, 683 (7th Cir.1994) ("All that is required is that the arbitrator's interpretation of the collective bargaining agreement is derived from the language of the requirement."); *Loveless v. Eastern Air Lines, Inc.,* 681 F.2d 1272, 1279 (11th Cir.1982) (Awards not drawing their essence from the CBA reflect neither the language of the CBA nor the intent of the parties).

■ An award may also be upheld if it is based on the arbitrator's understanding of industry practices. *Federated,* 901 F.2d at 1497. An arbitrator is "not confined to the express terms of the contract" but may also consider the "industrial common law" which "is equally a part of the collective bargaining agreement although not expressed in it." *Id.* "The arbitrator's finding is not beyond the essence of the contract if it is derived from the arbitrator's unique expertise." *Id.*

The arbitrator inferred a just cause requirement from two sources. First he noted that "sufficient or just cause requirements will be inferred in all modern day collective bargaining agreements which do not contain an express 'just cause' standard for discharge provision." Second, he concluded that the CBA's seniority section, which stipulates that in the event of "dismissal for cause" an employee loses his seniority, implied a just cause requirement.

Both rationales independently support the award under the case law of this and other circuits. One could argue that the just cause language in the seniority provision cuts against Rodriguez and the union in that by stating that employees terminated for cause lose their seniority, it implies that employees terminated without cause will not lose their seniority rights thereby suggesting that the company has the right to terminate without cause. That interpretation would be bolstered by the language providing management broad authority in managing the work force.

■ However, even if this court disagrees with the arbitrator's interpretation, it will uphold it so long as it draws its essence from the contract. *Phoenix,* 989 F.2d at 1080. Thus while the arbitrator's award may be based on a misreading of the CBA, it satisfies this "essence" test because it is based on contract language in the seniority provision. *See id.; Jasper Cabinet,* 77 F.3d at 1028. As the CBA does not expressly provide that employees may be terminated without cause, the arbitrator's award is not one of "those egregious cases" in which an arbitrator ignored the "plain language" of the CBA. *See Stead,* 886 F.2d at 1205 n. 6.

■ The arbitrator's first rationale—just cause requirements are inferred from all

modern day CBA's which do not contain an express provision—is also a sufficient basis for upholding the award. In *Federated*, this court held that the an award draws its essence from the CBA even when it is based not on the language in the CBA but rather on the arbitrator's understanding of industry and practices, i.e. industrial common law. 901 F.2d at 1497. *See also United Food and Commercial Workers Int'l, AFL–CIO, Local Union No. 634 v. Gold Star Sausage Co.*, 487 F.Supp. 596, 600 n. 7 (D.Colo.1980) ("industrial common law" relied on by arbitrators need not be particular to a certain industry but can include concepts common to labor contracts). The court concluded that "because it is not unusual for an arbitrator to apply due process notions to just cause, the arbitrator derived his decision from the essence of the collective bargaining agreement." *Federated*, 901 F.2d at 1497.

Although the issue in *Federated* was whether a just cause requirement implied due process protections rather than the implication of a just cause requirement as in the instant case, the court's analysis was not limited to that set of facts. This court broadly stated that an award based on the arbitrator's understanding of industrial practices draws its essence from the collective bargaining agreement. *Id.* The court's citation for that proposition to *Steelworkers v. Warrior & Gulf Co.*, 363 U.S. 574, 581–82, 80 S.Ct. 1347, 1352–53, 4 L.Ed.2d 1409 (1960), in which the issue was whether a dispute over contracting-out work was subject to arbitration, underscores the general ability of arbitrators to rely on their understanding of industrial common law. *See id.*

As it is very common for arbitrators to infer just cause requirements from CBA's which are silent on the issue, the award in the instant matter drew its essence from the CBA between SFIC and the union. *See id. See also Smith v. Kerrville Bus Co.*, 709 F.2d 914, 917 (5th Cir.1983) ("In instances where the language of a collective contract does not explicitly prohibit dismissal except for just cause, arbitrators typically infer such prohibitions from seniority clauses or grievance and arbitration procedures."); *Zellenbach Paper Co.*, 73 Lab. Arb. (BNA) 1140, 1142 (1979) (Sabo, Arb.) ("[E]ven where a contract fails to include any general limitations as to the right to discharge, arbitrators have concluded that a just cause restriction is implied in a modern Collective Bargaining Agreement."); Kenneth A. Sprang, *Beware the Toothless Tiger: A Critique of the Model Employment Termination Act*, 43 Am. U.L.Rev. 849, 910 (1994) ("So strong is the tradition of just cause in arbitral jurisprudence that many arbitrators have inferred the existence of a just-cause standard in agreements that did not expressly state such a standard."); Gary Minda and Katie R. Raab, *Time For an Unjust Dismissal Statute in New York*, 54 Brook.L.Rev. 1137, 1192–93 (1989) ("[I]f a just cause requirement is missing from the agreement, the arbitrator infers its existence from the seniority clause or grievance and arbitration provision."). The arbitrator's conclusion concerning the broad practice of inferring just cause requirements is well-supported and thus under *Federated* the award draws its essence from the CBA. *See Federated*, 901 F.2d at 1497.

The district court relied heavily on *Local Union No. 2812 v. Missoula White Pine Sash*, in which this court refused to infer a just cause requirement from a CBA. 734 F.2d 1384, 1387 (9th Cir.1984), *cert. denied*, 470 U.S. 1085, 105 S.Ct. 1845, 85 L.Ed.2d 144 (1985). *Missoula*, however, is largely irrelevant in this context because it involved direct interpretation of a CBA as opposed to review of an arbitrator's interpretation of a CBA. *See Stead*, 886 F.2d at 1205 ("the award, just as a contract, is the expression of the parties' will and must be enforced as expressed unless illegal or otherwise void."). Furthermore, in *Dickeson v. DAW Forest Products Co.*, decided three years after *Missoula*, this court noted that it is "difficult to imagine a meeting of the minds between an employer and a union authorizing an employer to discharge an employee without good cause." 827 F.2d 627, 631 (9th Cir.1987)

Finally, the district court also suggested that the arbitrator exceeded his authority because he effectively added a new term to the agreement. To infer a requirement is to find it already in the CBA, albeit only im-

plied, rather than to add a new requirement. Thus because the award and inference of the just cause requirement draw their essence from the CBA, the arbitrator did not exceed his authority.

REVERSED and REMANDED with instructions to enforce the arbitrator's award.

RYMER, Circuit Judge, dissenting:

While there is no question that the scope of review of an arbitrator's decision in a labor dispute is extremely narrow, still awards must represent a "plausible interpretation of the contract." *Phoenix Newspapers, Inc. v. Phoenix Mailers Union Local 752*, 989 F.2d 1077, 1080 (9th Cir.1992). When the CBA has a management rights clause that explicitly gives the company the exclusive right to discharge employees,[1] and that right is unfettered by any constraint elsewhere in the agreement which could arguably import a "cause" requirement into the process, I have a hard time understanding how the arbitrator's finding that "sufficient or just cause will be inferred in all modern day collective bargaining agreements which do not contain an express 'just cause' standard for discharge provision" can possibly "draw its essence from the collective bargaining agreement." *Federated Dep't Stores v. United Food & Commercial Workers Union, Local 1442*, 901 F.2d 1494, 1496 (9th Cir.1990) (noting this as exception to general deference to arbitrator's award).

We have previously considered when a cause standard can, and when it cannot, be implied in a collective bargaining agreement. On the one hand, in *Local Union No. 2812 v. Missoula White Pine Sash*, 734 F.2d 1384, 1387 (9th Cir.1984), *cert. denied*, 470 U.S. 1085, 105 S.Ct. 1845, 85 L.Ed.2d 144 (1985), we found no basis in the agreement for implying a just cause standard for discharge in the face of a management rights clause that gave the company "the sole and exclusive

right to hire, discipline and discharge any employee," and in the absence of any other language that limited the company's right to discharge at will. On the other hand, in *Dickeson v. DAW Forest Products Co.*, 827 F.2d 627, 630 (9th Cir.1987), we implied a "good cause" standard for discharge because the grievance procedure specifically contemplated a finding that an employee was "unjustly discharged" or else the employee must be reinstated, and there was no provision concerning management's prerogative over discharge. Between these bookends, it seems to me that SFIC's collective bargaining agreement is like White Pine's and unlike DAW's: the SFIC contract has an express clause stating that the company has the exclusive right to discharge, and the SFIC grievance procedure does not contemplate a finding as to whether a discharge is made with cause. Just as we couldn't see any basis in the agreement for implying a cause requirement in *White Pine*, I can't see any way that implying a "cause" requirement in SFIC's agreement is a "plausible interpretation of the contract."

The arbitrator relied on the Seniority provision[2] in finding that the parties intended to have a "cause" standard, but at most that provision implies that "cause" matters when an employee whose service has been interrupted is recalled. Indeed, the only inference plausibly arising out of this provision is that some dismissals *may* be without cause (in which case if the employee is later re-hired, he keeps his seniority whereas if his dismissal were with cause, he loses it).

The arbitrator also apparently relied on his own understanding of industrial practice in finding that just cause "will be inferred in all modern day collective bargaining agreements." However, the SFIC agreement expressly states that an arbitrator "shall not have the authority to amend or modify this Agreement or to establish new terms and conditions of this Agreement." Article

---

1. "Except as specifically modified, delegated or granted in this Agreement, the Company retains the exclusive right ... to hire, promote, transfer, lay off, demote, suspend, discipline and discharge employees ..." Article II(A) Management of Operations.

2. It provides in relevant part:

A) Seniority is defined as the status secured by length of service while in the continuous employ of the Company. Seniority is lost when service is interrupted according to the following: ... (e) Dismissal for cause.
Article IX Seniority.

928

VIII(B) Arbitration. It seems to me that this is just what implying a "cause" standard does in this case. In any event, the arbitrator's ability to draw on his own understanding of industrial practices cannot possibly mean that whatever he says about "modern day collective bargaining agreements" will "draw[ ] its essence from the collective bargaining agreement" at issue—regardless of the extent to which it conflicts with the express language of the particular agreement, and without regard to how courts have construed the terms of virtually identical agreements.

Because I believe that the award fails to draw its essence from the CBA and cannot be a plausible interpretation of the agreement, I would affirm.