LINE DRIVERS, PICKUP AND
DELIVERY LOCAL UNION
NO. 81, Plaintiff–Appellant,

v.

ROADWAY EXPRESS
INCORPORATED, Defendant–Appellee.

No. 97–35582.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 9, 1998.

Decided Aug. 6, 1998.

Darrell L. Cornelius, Portland, Oregon, for plaintiff-appellant.

Craig A. Crispin, Crispin & Associates, Portland, Oregon, for defendant-appellee.

Before: ALARCON, FERGUSON, and BRUNETTI, Circuit Judges.

Opinion by Judge BRUNETTI; Dissent by Judge FERGUSON.

BRUNETTI, Circuit Judge:

Appellant Line Drivers, Pickup and Delivery Local Union No. 81 (the Union) contends that the district court erred in granting summary judgment enforcing an arbitration award in favor of appellee Roadway Express, Inc. (the Employer). We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

## I.

We review de novo the district court's grant of summary judgment confirming an arbitration award. *Sheet Metal Workers' Int'l Ass'n Local Union No. 359 v. Madison Indus., Inc.*, 84 F.3d 1186, 1190 (9th Cir.1996). However, judicial review of an arbitration award is "limited and highly deferential." *Id.* So long as an arbitrator's award "draws its essence from the collective bargaining agreement" and "represents a plausible interpretation of the contract," the court is bound to enforce it. *United Food & Commercial Workers Union, Local 1119, AFL–CIO v. United Markets, Inc.*, 784 F.2d 1413, 1415 (9th Cir.1986).

"A reviewing court is bound—under all except the most limited circumstances—to

defer to the decision of [the arbitrator], even if ... that ... decision finds the facts and states the law erroneously." *SFIC Properties, Inc. v. Int'l Ass'n of Machinists & Aerospace Workers, Dist. Lodge 94, Local Lodge 311*, 103 F.3d 923, 924–25 (9th Cir.1996). "If, on its face, the award represents a plausible interpretation of the contract, judicial inquiry ceases and the award must be enforced." *Sheet Metal Workers Int'l Ass'n Local No. 359, AFL–CIO v. Arizona Mechanical & Stainless, Inc.*, 863 F.2d 647, 653 (9th Cir. 1988).

An award may also be upheld if it is based on the arbitrator's understanding of industry practices. *SFIC*, 103 F.3d at 925. An arbitrator is "not confined to the express terms of the contract"; he may also consider the "industrial common law" which "is equally a part of the collective bargaining agreement although not expressed in it." *Id.* "The arbitrator's finding is not beyond the essence of the contract if it is derived from the arbitrator's unique expertise." *Id.*

## II.

The relevant facts in this case are undisputed. On June 19, 1996, Roger Bowman, an employee of Roadway Express, was physically assaulted by several of his coworkers. Bowman did not report the incident to any management or supervisory personnel until November 25, 1996, when he told his manager Dennis Brown of the assault, and expressed concerns for his safety. Brown told Bowman to submit a sworn affidavit regarding the incident, which he did on December 4, 1996. That same day, all of the employees involved in the incident, except Bowman, were discharged pursuant to the terms of their collective bargaining agreement (CBA).

On December 12, 1996, the Union filed two grievances on behalf of the discharged employees, challenging the discharges both on the merits and on timeliness grounds under the CBA. Two CBA Grievance Committees issued oral, unanimous decisions upholding the discharges.[1]

1. The Grievance Committees did not express the grounds for their decisions. *See Stead Motors of Walnut Creek v. Automotive Machinists Lodge No. 1173, Int'l Ass'n of Machinists and Aerospace Workers*, 886 F.2d 1200, 1206 (9th Cir.1989) (citation omitted) (stating that arbitrators have no obligation to give their reasons for an award). However, in a later arbitration proceeding against another worker involved in the attack on Bowman, the Grievance Committee expressly

The Union then filed two suits seeking to have the decisions of the Grievance Committees vacated, which suits were consolidated into the present action. The district court granted summary judgment for the Employer, finding that the Grievance Committees' interpretations of the CBA were plausible. The Union now appeals that decision.

### III.

■ The provision of the CBA in question here is Article 46, Section 2(b), which provides as follows:

> Discharge or suspension must be by proper written notice to the employee and the Union affected within ten (10) days exclusive of Saturday, Sunday and holidays of the occurrence of the violation claimed by the Employer as the basis for discharge or suspension, except where dishonesty is involved. In cases where dishonesty is involved the discharge or suspension notice must be within twenty (20) calendar days of the Employer obtaining verifiable evidence of the alleged dishonesty.

The sole issue before us is whether the district court erred in holding that the CBA Grievance Committees properly construed the term "occurrence" in Article 46, Section 2(b) as requiring the Employer's knowledge of the incident. We agree with the district court that this was a plausible, commonsense reading of the provision, given that the Employer could not have possibly disciplined the employees who participated in the assault before it had knowledge of the misconduct. Once the Employer learned of the incident, it acted expeditiously to discipline the offending employees within the allotted ten days.

The Union argues that the language of the CBA requires the Employer to give notice of discipline within ten days of the actual misconduct, regardless of when the Employer learns of the incident. While the provision at issue certainly could be read this way, it is not the job of courts to second-guess arbitrators so long as their understanding of the CBA draws its essence from the contract. *See United Markets,* 784 F.2d at 1415.

Moreover, under the Union's reading of the CBA, those employees who manage to

conceal their misconduct beyond the ten-day period will be unjustly rewarded for covering up their actions. Thus, it is easy to see how the arbitrators, based on their expertise, rejected this interpretation. We do not believe this case presents one of "those egregious cases in which ... the arbitrator's award ignored the plain language of the contract" or the arbitrator " 'manifestly disregarded' the contours of the bargain expressed in outline by the collective bargaining agreement." *See Stead,* 886 F.2d at 1205 n. 6.

Because the Grievance Committees' decisions were entirely plausible and reasonable under the circumstances, they must be enforced.

AFFIRMED.

FERGUSON, Circuit Judge, Dissenting:

The arbitration committees in this case read a knowledge requirement into the plain language of the parties' collective bargaining agreement. Although a labor arbitrator is not confined to the four corners of the collective bargaining agreement, it may not disregard the facts of the particular case before it while engaging in contract interpretation. It is the facts of a particular case and the parties' inability to foresee them that justify augmentation of the language of an agreement. I dissent because the arbitral committees in this case have interpreted the contract language so as to work a manifest injustice.

The proper resolution of this case depends on a full understanding of the context in which the disputed discharges took place. Brenda Vanderkin, married with two children and a freight handler at Roadway Express, submitted evidence that for more than one year, between August 1995 and June 1996, co-worker Roger Bowman sexually harassed her. Bowman continuously made comments about Vanderkin's breasts and genitalia, and touched her breasts at the workplace as well. By June 1996, Bowman's harassment became almost a daily occurrence, widely known to Vanderkin's co-workers and supervisors. Bowman was not

found for the discharged employee on the basis that he was given notice of his discharge more

than ten days after the Employer received knowledge of the incident.

discharged, however, and the harassment continued unabated.

On June 19, 1996, Bowman hid a cup of water on Vanderkin's forklift, positioning it so that it would spill when Vanderkin moved the forklift. The cup fell as anticipated and soaked Vanderkin's tee shirt. Later that day, in response to Bowman's conduct and Roadway's general unwillingness to address the harassment, four of Vanderkin's co-workers held Bowman in the break room while Vanderkin pulled his pants down and another employee took a polaroid picture of his genitals.

Bowman states that the break room was crowded at the time of the pantsing and that the scuffle was lengthy and loud. Once released, Bowman chased his co-workers through the yard and finally stood in the middle of the dock, refusing to move until they had given him the picture. Bowman indicated that for more than six months after the pantsing, co-workers continued to yell, post drawings, and pass notes around the workplace regarding the incident.

Two arbitral committees provided for in the parties' collective bargaining agreement upheld the termination of ten employees involved in the pantsing. The relevant clause in the parties' collective bargaining agreement provides that the employer may only terminate an employee within ten days from "the occurrence" on which the dismissal is based. It is undisputed that the discharges occurred more than ten days after the pantsing and would therefore appear to be untimely. Nevertheless, the arbitration committees construed the word "occurrence" as requiring Roadway's knowledge of the incident, and found that Roadway did not know of the incident until Bowman reported in to his supervisor. The committees determined that the discharges were timely because they took place within ten days of Bowman's report to his supervisor. They did so without considering the facts of the industrial dispute, the custom and practice of the work place, the deliberate blindness of the employer to the working conditions of its employees, or any other matter that would permit a reasoned judgment.

In the *Steelworkers Trilogy*,[1] the Supreme Court determined that the Labor Management Relations Act establishes a policy of "industrial self-government" under which preference is to be given to the resolution of labor disputes through arbitration. *See also United Paperworkers Internat'l Union v. Misco, Inc.*, 484 U.S. 29, 37, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987) (discussing rationale). Consequently, the scope of review of a labor arbitration decision is extremely narrow. *See, e.g., Federated Dept. Stores v. United Food and Commercial Workers Union, Local 1442*, 901 F.2d 1494, 1496 (9th Cir.1990). The Court may not review the merits of the case, even if the arbitrator makes mistakes of both fact and law. *Phoenix Newspapers, Inc. v. Phoenix Mailers Union Local 752*, 989 F.2d 1077, 1080 (9th Cir.1993) (quoting *Stead Motors v. Automotive Machinists Lodge No. 1173*, 886 F.2d 1200, 1204 (9th Cir.1989)).

Nevertheless, this Court has identified three exceptions to the general deference to arbitration awards: (1) when the award does not "draw its essence" from the collective bargaining agreement; (2) when the arbitrator exceeds the scope of the issues submitted; and (3) when the award runs counter to public policy. *SFIC Properties, Inc. v. International Ass'n of Machinists & Aerospace Workers, Local Lodge 311*, 103 F.3d 923, 925 (9th Cir.1996). The analysis of whether the decision draws its essence from the collective bargaining agreement turns in part on whether the arbitrator ignored the "plain language." *See Stead*, 886 F.2d at 1205 n. 6; *SFIC*, 103 F.3d at 925; *Detroit Coil v. International Ass'n of Machinists & Aerospace Workers, Lodge No. 82*, 594 F.2d 575, 579 (6th Cir.1979).

It would be folly to shackle the arbitrator to dictionary definitions of the words contained in the collective bargaining agreement. It is unlikely that the parties will be able to anticipate all of the many subjects of

**1.** *United Steelworkers v. American Manufacturing Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960).

disagreement that will arise over the course of their relationship. Therefore, the Supreme Court has indicated that the arbitrator is not confined to the four corners of a collective bargaining agreement. *See Misco,* 484 U.S. at 38, 108 S.Ct. 364; *Warrior & Gulf Co.,* 363 U.S. at 581–82, 80 S.Ct. 1347; *Enterprise Wheel,* 363 U.S. at 597, 80 S.Ct. 1358; *Phoenix Newspapers,* 989 F.2d at 1081. The arbitrator may look, for example, to industrial custom or the past practice of the parties to give meaning to a particular provision of the contract.

Nevertheless, once a labor arbitrator begins a process of legal interpretation of a contract, it must do so cognizant of the specific factual context in which it makes its decision. It is the unforeseen nature of the specific facts of a case which allows the arbitrator to embark on the process of contract interpretation in the first place. Where the arbitrator does not ground its decision on the facts of a particular case, it has abdicated its responsibilities and its decision is no longer entitled to heightened deference.

In the present case, it stretches credulity to suggest that Roadway Express supervisors were unaware of the obstreperous pantsing nor heard any of the catcalls nor observed any of the drawings or notes posted about the premises. Even if Roadway had no knowledge of the incident prior to Bowman's report, however, it shares the blame for its employees' attempt at self-help due to its complete failure to protect Vanderkin from Bowman's outrageous conduct. When the employer contends that it did not know about the facts of this case until a formal complaint was submitted by Bowman, it has closed its eyes to everything that happened on the docks, in the break room, and the drawings posted on the bulletin boards. It should not be permitted to shield itself by such self-serving denials, at least by a motion of summary judgment when the facts submitted by the plaintiff clearly show that everyone, including supervisors, who worked the docks knew for a long time what happened. Even in criminal cases defendants are accountable when their defense is blind ignorance. *See, e.g., United States v. Baker,* 63 F.3d 1478, 1491 (9th Cir.1995).

Given the particular facts of this case, the arbitral committees were unjustified in departing from the bargained-for language of the collective bargaining agreement. In this case, justice and common sense have not been served. I therefore respectfully dissent.