**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

VIRGINIA MASON HOSPITAL, a
division of Virginia Mason
Medical Center, a Washington
non-profit corporation,
     *Plaintiff-Appellant,*

   v.

WASHINGTON STATE NURSES
ASSOCIATION, a labor union,
    *Defendant-Appellee.*

No. 06-35073

D.C. No.
CV-05-01434-MJP

VIRGINIA MASON HOSPITAL, a
division of Virginia Mason
Medical Center, a Washington
non-profit corporation,
     *Plaintiff-Appellee,*

   v.

WASHINGTON STATE NURSES
ASSOCIATION, a labor union,
    *Defendant-Appellant.*

No. 06-35130

D.C. No.
CV-05-01434-MJP

OPINION

Appeals from the United States District Court
for the Western District of Washington
Marsha J. Pechman, District Judge, Presiding

Argued and Submitted
November 6, 2007—Seattle, Washington

Filed December 21, 2007

Before: William C. Canby, Susan P. Graber, and
Ronald M. Gould, Circuit Judges.

16581

Opinion by Judge Gould

**COUNSEL**

Howard N. Goodfriend and Devin T. Theriot-Orr, Edwards, Sieh, Smith & Goodfriend, P.S., Seattle, Washington, for the appellant/cross-appellee.

Lawrence Schwerin, Schwerin Campbell Barnard LLP, Seattle, Washington, for the appellee/cross-appellant.

Barbara Allan Shickich and Charlick S. Fitzpatrick, Ridell Williams, P.S., Seattle, Washington; Mary Sooter, Faegre & Benson, LLP, Boulder, Colorado; and Alice L. Bodley, American Nurses Association, Silver Spring, Maryland, for the amici curiae.

---

## OPINION

GOULD, Circuit Judge:

In this appeal, we review the district court's decision granting summary judgment to the Washington State Nurses Association ("WSNA" or "the union") and upholding an arbitral award prohibiting Virginia Mason Hospital ("Virginia Mason" or "the hospital") from unilaterally implementing a mandatory flu immunization regime as a "fitness for duty" requirement for all nurses and other employees. The hospital contends that the arbitrator exceeded his authority by failing to apply relevant provisions of the parties' collective bargaining agreement ("CBA") and by imposing a duty, which is not part of the CBA's text, to bargain collectively over all terms and conditions of employment. Virginia Mason also argues that the arbitral award should be set aside as contrary to public policy. WSNA cross-appeals the district court's refusal to award the union the attorneys' fees that it accrued in defending the arbitrator's award. Reviewing the district court's analysis of the arbitrator's actions de novo, *Line Drivers, Pickup & Delivery Local Union No. 81 v. Roadway Express Inc.*, 152 F.3d 1098, 1099 (9th Cir. 1998), and its decision on the attorneys' fees issue for abuse of discretion, *Wellman v. Writers Guild of Am., W., Inc.*, 146 F.3d 666, 674 (9th Cir. 1998), we affirm.

## I

Virginia Mason is a 336-bed acute care hospital in Seattle, Washington. It employs between 600 and 700 registered

nurses, all of whom are represented by WSNA. Because the elderly and immune-compromised patient population that Virginia Mason serves is at high risk for contracting the flu if exposed to it and for suffering severe and even fatal consequences if infected, the hospital has long recommended that its employees, including nurses, be vaccinated for influenza to reduce the chance of transmitting the virus from staff to patients. Studies have shown that staff-to-patient flu transmittal is prevalent in hospitals and other health care facilities because about half of those infected with influenza are asymptomatic and because as many as 70% of health care workers continue to go to work even when experiencing flu symptoms.

Virginia Mason implemented a voluntary flu immunization program in 1998 under which flu vaccines were given free of charge to hospital staff, as a cart made the rounds to nursing stations, the hospital cafeteria, staff meetings, and other locations that employees frequented. Although this voluntary program had some success, after six years it had achieved a staff immunization rate of only 55%. As a result, the hospital decided in September of 2004 to make its flu immunization program mandatory. Virginia Mason then circulated a memo to all staff stating that, except in cases of a religious objection or documented vaccine allergy, proof of flu vaccination was going to become a " 'fitness for duty' requirement" and that anyone who could not show proof of vaccination by January 1, 2005, would "face termination" unless he or she agreed to take flu prophylaxis medication at his or her own expense. Virginia Mason's board of directors approved a corresponding amendment to the hospital's "fitness for duty" policy in November of 2004, adding the following language: "as conditions of hire or initial assignment, . . . all prospective workforce members shall . . . undergo . . . annual influenza . . . vaccination."

The hospital deferred implementation of the new mandatory policy to the 2005-06 flu season because of a vaccine

shortage, but in the meantime WSNA filed a grievance about the proposed policy under the CBA, stating that, although "receiving influenza vaccine is a good choice for most nurses, it is just that — a choice" and that "receipt of any medical treatment is up to the individual." The grievance was submitted to an arbitrator who held a hearing on June 1, 2005. Although the policy had not yet been enforced because the 2005-06 flu season had not begun, both parties authorized the arbitrator to determine prospectively whether, under the CBA that was in place when the policy was first promulgated in September 2004,[1] the hospital had the right to impose such a policy unilaterally without bargaining over it with representatives of the union.

In a written decision circulated on August 8, 2005, the arbitrator sustained WSNA's grievance and ordered that the mandatory flu immunization protocol be rescinded and that the hospital's fitness for duty policy be amended to delete the requirement of annual flu vaccination. The arbitrator grounded his decision on his interpretation of the CBA's preamble and union recognition clause, which he read as requiring the hospital to bargain collectively with WSNA representatives over all terms and conditions of employment. He further stated that because it was incorporated into the hospital's "fitness for duty" policy, the flu vaccination requirement was a condition of both initial and continued employment and thus a mandatory subject for bargaining that did not fall within the CBA's management rights clause, which allowed hospital management to "promulgate . . . personnel policies" and take other types of actions unilaterally. The arbitrator concluded that this management rights clause covered only "operational decisions" and did not extend to

---

[1]The hospital and the union negotiated and entered into a new CBA after WSNA filed its grievance about the mandatory immunization policy and before that grievance was submitted to arbitration. The new CBA went into effect on November 16, 2004, and remained in force until November 15, 2007. This case is governed by the CBA that was in effect from June 21, 2001, through November 15, 2004.

policies that "directly affect[ed]" terms and conditions of employment, as the mandatory immunization policy did. Finally, the arbitrator analyzed the CBA provision stating that all matters not specifically discussed during CBA negotiations or included in the CBA were waived as matters of mandatory bargaining, the so-called "zipper clause." The arbitrator determined that, even though the subject of flu immunization was not covered in the new CBA adopted in November 2004 or in the discussions leading to its enactment, WSNA's filing of a grievance over the immunization policy was sufficient negotiation or discussion of the issue such that it was not waived.

Virginia Mason filed an application with the United States District Court for the Western District of Washington under section 301 of the National Labor Relations Act, 29 U.S.C. § 185, seeking to vacate the arbitral award on the ground that the arbitrator exceeded his authority by failing to apply relevant terms of the CBA and by reading additional terms into that agreement that were not part of its plain language, as well as on the ground that the award was irrational and contrary to public policy because it prevented the hospital from protecting patient health and thus performing its core mission. Both parties filed motions for summary judgment. The district court granted WSNA's motion and denied Virginia Mason's motion, holding that the arbitrator did not exceed his authority, that his interpretations of relevant provisions of the CBA were plausible, and that Virginia Mason did not show any explicit, well-defined, and dominant public policy that was contravened by the arbitrator's decision. As part of its motion for summary judgment, WSNA also sought an award of attorneys' fees as a sanction for Virginia Mason's having brought the federal suit in bad faith, but the district court held that there was no evidence of bad faith and denied this aspect of WSNA's motion. This appeal and cross-appeal followed.

## II

We recognize Virginia Mason's commendable desire to protect its vulnerable patients from infection with the flu. We

also recognize, as the arbitrator did, "the impressive list of health authorities and experts who recommend that health care workers be immunized because they are in a highly contagious environment and deal with patients who are at high risk of contracting the flu." At the same time, we recognize that the arbitrator, as the party chosen by the hospital and the union to resolve grievances under their CBA, is entitled to considerable deference and that his decision in this matter may be vacated only if it failed to "draw[ ] its essence" from the CBA itself, *United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 597 (1960), or if it violated an "explicit, well defined, and dominant" public policy. *E. Associated Coal Corp. v. United Mine Workers of Am.*, 531 U.S. 57, 62 (2000) (internal quotation marks omitted). We conclude that neither of these standards for vacation is met here.

## A

**[1]** Virginia Mason points to three provisions in the CBA that it claims permitted the hospital to implement its mandatory immunization policy without first bargaining with WSNA over it: the patient care priority clause (3.3), the management rights clause (18.1), and the zipper clause (20.4). We may vacate the arbitrator's award based on its treatment of any of these clauses only if he ignored their plain language; even if we were convinced that the arbitrator misread the contract or erred in interpreting it,[2] such a conviction would not be a permissible ground for vacating the award. *See United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 37-38

---

[2]We express no view as to whether or not the arbitrator here properly interpreted the CBA in this case, as it is neither necessary nor appropriate for us to do so under the applicable standard of review. *See Enter. Wheel & Car Corp.*, 363 U.S. at 599 ("[T]he question of interpretation of the collective bargaining agreement is a question for the arbitrator. It is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his.").

(1987). The arbitrator did not ignore the plain language of any of these clauses. To the contrary, he listed all of them in the "Relevant Contract Provisions" section of his written decision, and he devoted entire sections of that decision to analysis of the management rights and zipper clauses. With respect to the patient care priority clause, the arbitrator took pains to point out—when he characterized the policy as a "condition of employment" rather than an "operational decision . . . [regarding] the means and methods of treating and caring for patients"—that the hospital's new immunization policy would primarily affect employees and would implicate patient care only "indirect[ly]." The arbitrator acknowledged the hospital's arguments based on all three of these clauses but simply found them unpersuasive. Therefore, the arbitrator's decision was not procedurally unsound because of a failure to apply relevant provisions of the CBA. *See Haw. Teamsters v. United Parcel Serv.,* 241 F.3d 1177, 1181 (9th Cir. 2001) ("Our task is, in essence, to review the procedural soundness of the arbitral decision, not its substantive merit.").

**[2]** We may also set aside the arbitrator's award if its interpretation of any of the relevant CBA provisions was not "on its face . . . a plausible interpretation of the contract." *Phoenix Newspapers, Inc. v. Phoenix Mailers Union Local 752*, 989 F.2d 1077, 1080 (9th Cir. 1993). We have cautioned, however, that such a "plausibility" review "does not represent an independent avenue for a merits-based attack on an arbitral award" but is simply "another way of formulating the old rule of *Enterprise Wheel*," namely, that the arbitrator must derive the award from the essence of the contract and may not " 'dispense his own brand of industrial justice.' " *Haw. Teamsters*, 241 F.3d at 1183 (quoting *Enter. Wheel & Car Corp.*, 336 U.S. at 597). Under this standard, the arbitrator's interpretation here was not implausible. He viewed the dispute as requiring him to determine whether the mandatory immunization policy should be characterized as a "personnel policy" that Virginia Mason could implement unilaterally under Article 18.1 or a "condition of employment" that must be submit-

ted to collective bargaining pursuant to the CBA's preamble and union recognition clause (1.1). As the arbitrator described it, "the issue is . . . whether the parties' rights under the Preamble and Article 1.1 supersedes [sic] Article 18.1 management rights." Thus he plainly established the contours of the dispute to be within the terms of the CBA. Although his reading of the management rights clause was narrow, it was not "on its face . . . [im]plausible" because the interpretation "draws its essence from the collective bargaining agreement." *Phoenix Newspapers*, 989 F.2d at 1080 (internal quotation marks omitted).[3]

[3] Virginia Mason also contends that the arbitrator exceeded his authority by reading into the CBA's preamble and union recognition clause a duty to bargain over terms and conditions of employment that is not explicitly stated in either of those provisions. An arbitrator is not, however, limited to the four corners of the CBA in interpreting its terms. *Phoenix*

---

[3]The arbitrator's conclusion that the hospital's proposed change to its flu immunization policy was a mandatory subject of collective bargaining is not in any way affected by the subsequent decision of Administrative Law Judge ("ALJ") Gregory Z. Myerson of the National Labor Relations Board ("NLRB") holding that Virginia Mason did not violate the National Labor Relations Act ("NLRA") when it failed to bargain with WSNA before implementing the flu control policy that replaced the mandatory immunization policy rescinded by the arbitral decision being reviewed here. This new policy requires nurses who have not been immunized for the flu to either take prophylactic antiviral medication or wear facemasks when in direct contact with patients during flu season, but the policy says nothing about discharging nurses who fail to comply, and the ALJ specifically found that no nurses represented by WSNA had been discharged, threatened with termination, or disciplined in any other way for refusing to wear facemasks in accordance with the policy. Consequently, the ALJ concluded that neither the implementation of the policy nor its effects constituted a mandatory subject for bargaining under the NLRA. Because of the lack of an explicit reference to termination of employment, this new influenza control policy can be distinguished from the mandatory immunization policy at issue in this appeal, and in any event the decisions of NLRB ALJs, while persuasive if factually similar, are not binding on courts reviewing arbitration awards.

*Newspapers*, 989 F.2d at 1081. He may also rely on "the industrial common law—the practices of the industry and the shop—[which] is equally a part of the collective bargaining agreement although not expressed in it." *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 581-82 (1960). When an arbitrator uses his knowledge of the industrial common law to infer a requirement from a CBA where the CBA is silent on that particular point, as the arbitrator did here with respect to the duty to bargain over conditions of employment, the arbitrator is not adding new terms to the agreement but is simply finding the inferred term already in the agreement, albeit only implied. *See SFIC Props., Inc. v. Int'l Ass'n of Machinists*, 103 F.3d 923, 926-27 (9th Cir. 1996).

**[4]** Here, the arbitrator inferred the duty to bargain from the CBA's preamble and union recognition clause in light of his understanding of the foundational labor law principle that management must bargain with recognized union representatives over terms and conditions of employment, a principle that is embodied in both statutory and judge-made law and that has become well established in all industries with unionized employees, including the health care industry. *See, e.g.*, 29 U.S.C. § 158(a)(5), (d); *see also Fibreboard Paper Prods. Corp. v. NLRB*, 379 U.S. 203, 210 (1964) ("Read together, [section 8(a)(5), (d) of the NLRA] establish the obligation of the employer and the representative of its employees to bargain with each other in good faith with respect to wages, hours, and other terms and conditions of employment." (internal quotation marks omitted)). The arbitrator acknowledged the central importance of this principle to the standards of labor-management relations that make up the industrial common law when he stated that the duty to bargain over terms and conditions of employment is "inherent in every collective bargaining agreement" and a "core underpinning of collective bargaining relationships." Thus we conclude that the arbitrator was acting within his authority when he allowed this element of the industrial common law to inform his

interpretation of the CBA as it applied to the dispute regarding the hospital's mandatory flu immunization policy.

**B**

**[5]** Finally, Virginia Mason argues that the arbitral award should be vacated as contrary to public policy. In order for us to overturn the arbitrator's decision on that basis, the hospital would first have to identify an "explicit, well defined, and dominant" public policy "ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests." *E. Associated Coal Corp.*, 531 U.S. at 62 (internal quotation marks omitted). The hospital would then have to demonstrate that that policy "specifically militates against the relief ordered by the arbitrator." *Stead Motors of Walnut Creek v. Auto. Machinists Lodge No. 1173,* 886 F.2d 1200, 1212-13 (9th Cir. 1989) (en banc); s*ee also United Food & Commercial Workers Int'l Union v. Foster Poultry Farms*, 74 F.3d 169, 174 (9th Cir. 1995) (holding that the party seeking to vacate the arbitration award bears the burden of establishing that the award violates an explicit, well-defined, and dominant public policy). We conclude that Virginia Mason fails to carry this burden.

**[6]** Virginia Mason points to state and federal regulations regarding infection control in hospitals as positive law sources for the public policy that it claims is contravened by the arbitrator's award. *See* Wash. Admin. Code 246-320-265(3) (requiring hospitals to "develop and implement an infection control program and . . . [a]dopt and implement written policies and procedures consistent with the published guidelines of the centers for disease control and prevention (CDC) regarding infection control in hospitals"; 42 C.F.R. § 482.42 (mandating that hospitals maintain an "active program for the prevention, control, and investigation of infections and communicable diseases" to receive funding through Medicare and Medicaid). Amicus curiae Washington State Hospital Association ("WSHA") also invokes Washington's Uniform Disci-

plinary Act, Wash. Rev. Code § 18.130.180(15), which sets professional standards for nurses and members of other professions and under which it is a violation to "[e]ngag[e] in a profession involving contact with the public while suffering from a contagious or infectious disease involving serious risk to public health." Hospitals theoretically could be liable under respondeat superior or other theories of corporate negligence for the unprofessional conduct of their nurse employees, but neither Virginia Mason nor WSHA has cited a single example of a hospital facing legal action because a patient contracted the flu from a health care worker. Nor has Virginia Mason provided any evidence of its inability, or the inability of peer institutions that do not require flu immunization of all employees, to comply with the state and federal regulatory regimes on infection control that it offers as its public policy rationale. In other words, while there is little doubt that the sort of mandatory immunization policy that Virginia Mason favors would enhance the aggressive infection control procedures and professional standards that state and federal regulations require, the hospital has not demonstrated that the converse is true and that the arbitrator's decision requiring Virginia Mason to bargain with union representatives before implementing such a policy is directly incompatible with either the state and federal regulations at issue or the public policies underlying them. The hospital has offered evidence of a developing medical consensus around mandatory flu immunization policies for health care workers, but no corresponding legal or regulatory consensus in support of such policies has yet emerged.[4] The more general policies that are

---

[4]Only one state, Arkansas, requires by statute that flu vaccines be administered to health care workers, and this mandate is limited to employees at long-term care facilities. Ark. Code Ann. §§ 20-10-1304 & -1305 (2006). Fifteen other states have laws or regulations dealing with the flu vaccine, primarily in nursing home settings, with most of these limiting the immunization requirement to those employees who consent. *See, e.g.*, 25 Tex. Admin. Code § 97.202(a)(2) (2006) (requiring that nursing homes offer flu vaccines to all employees "unless the vaccine is medically contraindicated by a physician or unless the employee . . . has refused the vaccine").

already in place both federally and in Washington to encourage infection control in hospitals do not specifically militate against the arbitrator's requirement that Virginia Mason engage in collective bargaining before imposing such a policy on its nurses as a condition of employment. Consequently, and despite the best of motives to promote the good health of its patients, Virginia Mason did not satisfy its burden of establishing an explicit and well-defined public policy that was contravened by the arbitral award. Without such a showing, we will not disturb the arbitrator's decision on a public policy basis. *See Ariz. Elec. Power Coop., Inc. v. Berkeley*, 59 F.3d 988, 992 (9th Cir. 1995) (stating that "courts should be reluctant to vacate arbitral awards on public policy grounds").

Also, we must recognize that the public policy favoring effective infection control in hospitals is not the only public policy potentially relevant to this issue. There is also a clearly established public policy requiring employers to bargain with their union-represented employees over conditions of employment, and this comes into high relief where, as here, employment can be terminated for failure to satisfy a condition. This policy favoring bargaining is at least as well defined and explicit as the policies regarding infection control. The policy favoring collective bargaining is memorialized in section 8(a)(5), (d) of the National Labor Relations Act and in numerous Supreme Court decisions. *See, e.g.*, *Fibreboard Paper Prods.,* 379 U.S. at 210. Where more than one public policy is germane to an arbitration award, we must engage in balancing of the relevant policies to determine whether to apply the public policy exception to vacate the arbitral award.

**[7]** For example, in *Eastern Associated Coal Corp.*, the United States Supreme Court considered an arbitrator's award reinstating a truck driver who had twice tested positive for marijuana use, in light of public policies expressed in the Omnibus Transportation Employee Testing Act, both discouraging drug use among drivers and promoting rehabilitation of those who do use drugs. 531 U.S. at 65. The Court deter-

mined, on balance, that "[t]he award before us is not contrary to these several policies, taken together." *Id.* Similarly here, we hold that the arbitrator's award prohibiting Virginia Mason from implementing its mandatory flu immunization policy unilaterally is not contrary to the array of relevant public policies, taken together, and we therefore allow it to stand.

## III

**[8]** We now turn to WSNA's cross-appeal on the issue of its attorneys' fees. While Virginia Mason's arguments for vacating the arbitrator's award are ultimately unavailing, we agree with the district court that these arguments were not frivolous and were not made for vexatious or oppressive reasons and that WSNA is therefore not entitled to attorneys' fees. *See Sheet Metal Workers' Int'l Ass'n Local Union No. 359 v. Madison Indus., Inc.*, 84 F.3d 1186, 1192 (9th Cir. 1996) (stating that a prevailing party in an action challenging a labor arbitration award may receive attorneys' fees if "the losing party acted in bad faith, vexatiously, wantonly, or for oppressive reasons" (internal quotation marks omitted)). Here, the district court found that the hospital's only reason for challenging the arbitrator's award was its sincere desire to protect its patients from the risk of infection in the way that it thought best, and we perceive no clear error in that factual determination. *See Wellman*, 146 F.3d at 674 (holding that a district court's finding of no bad faith is reviewed for clear error). We decline to adopt WSNA's contention that an employer's decision to exercise its statutory right to challenge an arbitral award in court, *see* 29 U.S.C. § 185(a), in the absence of any other conduct that violated or sought to frustrate that award, constitutes prima facie evidence of bad faith. Accordingly, the district court did not abuse its discretion in denying WSNA's request for attorneys' fees. *See Wellman*, 146 F.3d at 674 (stating that where the district court's finding of good faith is not clearly erroneous, a denial of attorneys' fees is reviewed for abuse of discretion).

**AFFIRMED.**