**INTERNATIONAL ASSOCIATION OF MACHINISTS & AEROSPACE WORKERS, DISTRICT LODGE NO. 50, LOCAL LODGE NO. 389, Plaintiff-Appellee,**

v.

**SAN DIEGO MARINE CONSTRUCTION CORP., a California Corporation, Defendant-Appellant.**

No. 78–2604.

United States Court of Appeals, Ninth Circuit.

June 4, 1980.

Kathleen M. Kelly, Littler, Mendelson, Fastiff & Tichy, San Francisco, Cal., for defendant-appellant.

Douglas F. Olins, Olins & Foerster, San Diego, Cal., for plaintiff-appellee.

Before TUTTLE,* WALLACE and NELSON, Circuit Judges.

NELSON, Circuit Judge:

This case arises from the San Diego Marine Construction Corporation's ("the Company's") decision to dismiss James Heller, the chief shop steward of Local 389 of the International Association of Machinists and Aerospace Workers ("the Union"). Heller and the Union protested the dismissal before an arbitrator, asserting, among other things, that the Company fired Heller without just cause. The arbitrator found that, although Heller's misconduct justified disciplining him, firing him was too severe a sanction under the circumstances. He therefore ordered Heller reinstated, but without back pay.

The Company brought an action in state court seeking correction of the arbitration award. The Union removed the case to District Court, because a dispute over the powers of an arbitrator as set forth in a labor agreement is a dispute over the violation of a contract between an employer and a labor organization within the meaning of § 301 of the Labor Management Relations Act, 29 U.S.C. § 185. The District Court confirmed the arbitration award on the basis of the arbitrator's oral opinion and its interpretation of the labor agreement. The Company now appeals to this Court.

In this appeal, the Company raises two issues: (1) Did the contract between the Union and the Company give the arbitrator authority to override a Company's decision to fire (rather than suspend) an employee, once he found that the Company was justified in disciplining him? (2) Did the arbitrator order the employee reinstated because of Company misbehavior *after* Heller was fired, and, if so, did the arbitrator thereby exceed the scope of his authority? These questions are primarily factual ones, and factual findings of the District Court, even those based on an interpretation of undisputed written evidence, must stand unless clearly erroneous. F.R.Civ. Proc. 52(a); *Lundgren v. Freeman*, 307 F.2d 104, 115 (9th Cir. 1962). Applying this standard, we find that the arbitrator had the power to reinstate the employee without back pay, and, although his oral opinion may seem ambiguous, that the arbitrator properly focused on the issue of whether the Company had just cause to fire Heller. We therefore affirm the order of the District Court granting the petition to confirm the arbitration award and denying the petition to correct it.

## I. STATEMENT OF FACTS

For at least several months before the events in question here, the Company and the Union found themselves in a "state of upheaval, discord, anger, [and] rebelliousness." Though it did not base its decision to fire Heller on his Union activities, the Company did think him among those chiefly responsible for the unrest.

The confrontation that led to Heller's firing arose because Heller believed that under the collective bargaining agreement he only needed to notify some shop steward or supervisor before he could leave his work area and go about union business, and a high management official believed that an employee like Heller needed permission before he could go about union business. The arbitrator found that regardless of whether Heller was right in asserting that he did not need permission, he could not of his own accord disregard the direct order of a high management official to the contrary; Heller was required, under the terms of the contract, to obey the order and file a grievance.

On April 4th, however, Heller left his work area without permission, and while he was talking to two members of another union, he noticed two management officials a hundred feet away from him. Heller went over to them, interrupted their conversation, and asked them, in essence, why they did not have more important things to

---

* Honorable Elbert T. Tuttle, Senior United States Circuit Judge, Fifth Circuit, sitting by designation.

do than spend their time watching him. The arbitrator found this conduct "rude," "disrespectful," "obstreperous," and "arrogant." Shortly afterwards, an informal grievance meeting took place between Heller and two management personnel to discuss what had taken place. At this time, Heller asserted flatly that he would say nothing unless a union representative were present. But even when a union representative was brought in, Heller refused to say anything until there was a formal grievance meeting.

The arbitrator determined that had Heller simply talked at this point about the dispute he was having (whether he needed permission to leave his work area and engage in union activities), he would never have been fired. Moreover, the arbitrator noted that one of the two management personnel at this initial meeting had in the past few months made comments to the union that were "coercive, intimidating and totally improper and violative of employee's rights." The arbitrator found that Heller only remained silent because he distrusted this official (Higgins) and because he was unaware that he would be fired if he did not talk. Therefore, the arbitrator reasoned, it was incumbent on Higgins to tell Heller that, if he did not talk, he would be fired. After describing the grievance procedure that took place after Heller was fired, the arbitrator concluded that it was unreasonable, in light of the full factual picture, for the company to discharge Heller.

## II. COMPANY DISCRETION IN FIRING ITS EMPLOYEES

■ The Company points to Article 13, Section 1, of the collective bargaining agreement between the parties, the Management Rights Clause. It says, in relevant part, "[t]he right to . . . suspend or discharge employees for just cause . . is vested exclusively in this Company, subject to the terms of this Agreement." The Company concedes that the arbitrator could have refused to uphold Heller's dismissal if he had found that the Company acted without "just cause," but it argues that because the arbitrator found Heller's conduct insubordinate and because he held that disciplining him was justified, the choice of whether to fire him or merely suspend him was entirely the Company's under the terms of Article 13, Section 1. In other words, the Company argues that under the collective bargaining agreement there is only one kind of "just cause," and once "just cause" exists, the Company can either suspend or fire the employee as it pleases.

The arbitrator, however, interpreted this part of the collective bargaining agreement differently. Implicitly, the arbitrator determined that under the contract there might be "just cause" to suspend, when there was not "just cause" to fire. That the Company has the discretion to do the one in a particular case does not mean that it has discretion to do the other. Under the facts of this case, the arbitrator found that although Heller's conduct was sufficiently bad that under the agreement the Company could suspend him, the conduct was not so outrageous that it could dismiss him.

The situation we face is not like the one confronting the Tenth Circuit in *Mistletoe Express Service v. Motor Expressmen's Union*, 566 F.2d 692 (10th Cir. 1977), cited by the Company. In that case, the collective bargaining agreement explicitly stated that a particular form of misconduct (failure to turn in funds within 24 hours of their receipt) justified discharge of an employee. Once he found that the employee had committed this form of misconduct, the arbitrator was obliged to conclude that "just cause" for dismissal existed. By contrast, the agreement in this case does not expressly define Heller's misconduct as misconduct that constitutes just cause for firing.

■ The decisive point on this issue is that the labor agreement of the parties charges the arbitrator and not this Court with interpreting the collective bargaining agreement. Article 16, Section 2. To be sure, the arbitrator cannot substitute his or her discretion for the discretion of the Company, but the arbitrator does have the power to determine *when* a matter is subject to

Company discretion. When two plausible interpretations of a clause of a collective bargaining agreement exist, an arbitrator's choice of one or the other ought to be honored. As the Supreme Court said in *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 599, 80 S.Ct. 1358, 1362, 4 L.Ed.2d 1424 (1960), "the question of interpretation of the collective bargaining agreement is a question for the arbitrator. It is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns the construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his." *See Teamsters Local No. 878 v. Coca-Cola Bottling Co.*, 613 F.2d 716 (8th Cir. 1980).

## III. POST–TERMINATION CONDUCT OF THE COMPANY

■ The Company also argues that however defective its formal grievance meeting might have been, the arbitrator had no power to weigh these defects when he decided whether the circumstances justified firing Heller. How the Company conducted itself *after* it decided to fire Heller has nothing to do with whether it had the *power* to fire Heller in the first instance. *See Delta Lines, Inc. v. Teamsters Local 468*, 66 Cal.App.3d 960, 136 Cal.Rptr. 345 (1977).

In his oral opinion, the arbitrator did discuss the Company's conduct at the formal grievance procedure. Unlike the arbitrator in *Delta Lines*, however, this arbitrator did not state that he was reaching his decision because of post-termination conduct of the Company. Rather, the arbitrator seems to have reached his conclusion in light of all the circumstances surrounding the discharge. ("And I say, in my judgment, that this penalty was unreasonable because it was too severe, given this full factual picture. And for that reason, I'm going to overrule this discharge.")

The arbitrator reasoned that the Company did not have just cause to fire Heller because though Heller had been insubordinate, the Company itself was at least partially to blame for the firing and bore some responsibility for the bad blood that existed between it and the Union. Indeed, the arbitrator specifically noted that Heller would not have been fired if he had talked with management officials immediately after the confrontation and that the grossly improper behavior of one of the two management officials present was the cause of his refusal to talk. Although under other circumstances the Company might have been justified in firing Heller, it behaved unreasonably under the facts of this case because of its own behavior both before the events that directly led up to his firing and during them.

The Company interprets the opinion of the arbitrator differently, pointing to the amount of time the arbitrator devoted to the conduct of the Company at the grievance procedure in delivering his oral opinion. The Supreme Court, however, has consistently required us to favor the arbitrator's decision when his opinion is subject to several interpretations. "A mere ambiguity in the opinion accompanying an award, which permits the inference that the arbitrator may have exceeded his authority, is not a reason for refusing to enforce the award. Arbitrators have no obligation to the court to give their reasons for an award. To require opinions free of ambiguity may lead arbitrators to play it safe by writing no supporting opinions. This would be undesirable for a well-reasoned opinion tends to engender confidence in the integrity of the process and aids in clarifying the underlying agreement." *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 598, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960).

## IV. CONCLUSION

For the reasons we have stated, the order of the District Court confirming the arbitration award is

AFFIRMED.