HAWAII TEAMSTERS AND ALLIED
WORKERS UNION, LOCAL 996,
Petitioner–Appellant,

v.

UNITED PARCEL SERVICE,
Respondent–Appellee.

No. 99–17079.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 3, 2000

Filed Sept. 6, 2000

As Amended Oct. 20, 2000.

David A. Rosenfeld and W. Daniel Boone, Van Bourg, Weinberg, Roger & Rosenfeld, Oakland, California, for the petitioner-appellant.

Ernest C. Moore III and Christine S.Y. Chun, Torkildson, Katz, Fonseca, Jaffe, Moore & Hethrington, Honolulu, Hawaii, for the respondent-appellee.

Before: PREGERSON, HAWKINS, and McKEOWN, Circuit Judges.

PREGERSON, Circuit Judge:

Hawaii Teamsters and Allied Workers, Local 996 ("Local 996") appeals the district court's decision denying its petition to vacate an arbitration award. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we reverse.

## I

On September 4, 1998, United Parcel Service, Inc. ("UPS") fired employee Carlos Harris for "insubordination and abusive conduct toward superiors and co-employees in violation of house rules." In response to a dispute over his paycheck, Harris uttered profanity when conversing with a payroll clerk and the Human Resources Director. The Human Resources Director ordered Harris to stop swearing. When Harris continued, the Human Resources Director terminated Harris. Prior to this incident, UPS had disciplined Harris on two occasions—on March 27, 1996 and on September 4, 1997—for using inappropriate or abusive language with his supervisors. Harris did not receive a disciplinary warning in the nine-month period preceding his discharge.

Harris is represented by Local 996. Local 996's collective bargaining relationship with UPS is governed by three agreements: (1) a National Master Agreement ("NMA") between UPS and the International Brotherhood of Teamsters, the international union with which Local 996 is affiliated; (2) the Western Region Supplemental Agreement ("Western Supplement") between UPS and the Western Conference of Teamsters; and (3) a Local Agreement between UPS and Local 996.[1]

The Local Agreement provides that "[a]ny case pertaining to a discharge or suspension shall be handled in accordance with Article 28, Section 2 of the Western Region Supplemental Agreement." Article 28, Section 2 of the Western Supplement regulates the conditions under which UPS may fire a bargaining unit employee:

Any case pertaining to a discharge or suspension shall be handled as follows:

No employee(s) shall suffer suspension or discharge without the employee(s) having been given a written warning notice wherein the facts forming the grounds for such warning notice are clearly set forth. The facts therein set forth must be of the same type as those upon which such suspension or discharge is founded.

(A) In cases of: (1) dishonesty; (2) drinking of alcoholic beverages while on duty; (3) recklessness resulting in a serious accident while on duty; (4) the carrying of unauthorized passengers; (5) unprovoked assault on an employee or a supervisory employee while on duty; (6) selling, transporting or uses of illegal narcotics while in the employment of the Employer; or (7) willful, wanton or malicious damage to the Employer's property, shall be dischargeable offenses without the necessity of a warning letter being in effect.

Section 2(B) of Article 28 permits the arbitrator to admit evidence of "any reason or reasons to substantiate unsatisfactory work performance arising out of circumstances which occurred during the nine (9) month period immediately preceding the date of discharge or suspension notice." Finally, Article 7 of the NMA limits UPS's power to fire summarily:

Except in cases involving cardinal infractions under the applicable Supplement, Rider or Addendum, an employee to be discharged or suspended shall be allowed to remain on the job, without loss of pay unless and until the discharge or suspension is sustained under the grievance procedure.

Local 996 grieved Harris's termination before the Labor–Management Committee for the Western Region. When internal grievance procedures failed to resolve the dispute, Local 996 and UPS agreed to submit the case to binding arbitration. A two-day arbitration hearing was held at which Local 996 argued that (1) Harris's termination was prohibited by the CBA; and (2) even if Harris's termination was not prohibited, UPS improperly terminat-

---

1. We refer to these three documents collectively as the "collective bargaining agreement" or "CBA."

ed him prior to an arbitration decision on the matter. The arbitrator upheld Harris's discharge. After finding that Harris did not commit one of the seven cardinal infractions listed in Article 28, § 2(A) of the Western Supplement, the arbitrator interpreted the CBA as permitting summary discharge without prior warning even if the employee did not commit one of the specified cardinal infractions:

> While the arbitrator is unable to find that this language used in that context rose to the level of an assault, it does rise to such insubordination and disrespect as to fall within industrially and socially disapproved conduct such as to authorize immediate dismissal without warning under Article 28. He holds that there are other cardinal sins perhaps not specifically named in this CBA article, which fall within the broad scope of insubordination and for which forthwith termination without benefit of warning, may legitimately be imposed.

The arbitrator concluded that Harris's conduct warranted summary dismissal without prior warning because his conduct violated industrial norms.

Local 996 filed in district court a motion to vacate the arbitral award. UPS opposed Local 996's motion to vacate and filed a motion to confirm the award. Finding that a plausible interpretation of the CBA supported the arbitral award, the district court confirmed the award:

> The Court finds Article 28, Section 2 of the Western Region Supplemental Agreement is ambiguous. Article 28, Section 2 does not specify whether the list of offenses which may result in immediate dismissal is exclusive. The clause, for example, could specify "only if" the employee commits one of the following cardinal sins may the employer summarily terminate an employee.

Local 996 appeals.

## II

The only issue in this case is whether the arbitrator's award in favor of UPS is based on a plausible interpretation of the collective bargaining agreement. The parties agree that Harris did not commit one of the seven cardinal infractions listed in Article 28, Section 2(A) of the Western Supplement. They also agree that Harris did not receive a warning notice in the nine-month period preceding his dismissal. Thus, we must decide whether the CBA may be plausibly interpreted as permitting UPS to discharge an employee who has not committed one of the seven specified cardinal infractions if (1) the employee has not received a warning in the preceding nine months and (2) before the discharge has been sustained under the grievance procedure. We hold that no plausible interpretation of the CBA permits UPS to do so.

■ We review de novo a district court's decision confirming an arbitration award. See *SFIC Properties, Inc. v. International Ass'n of Machinists & Aerospace Workers, Dist. Lodge 94*, 103 F.3d 923, 924 (9th Cir.1996) (reviewing de novo district court decision vacating arbitral award); *Phoenix Newspapers, Inc. v. Phoenix Mailers Union Local 752*, 989 F.2d 1077, 1081 (9th Cir.1993) (reviewing de novo district court decision affirming arbitral award). However, our review of labor arbitration awards is extremely deferential. "Courts ... do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts." *United Paperworkers Int'l Union v. Misco*, 484 U.S. 29, 38, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987). "Because the parties have contracted to have disputes settled by an arbitrator chosen by them rather than by a judge, it is the arbitrator's view of the facts and of the meaning of the contract that they have agreed to accept." *Id.* at 37–38, 108 S.Ct. 364. We must confirm an arbitral award unless the arbitrator has "dispense[d] his own brand of industrial justice" by making an award that does not "draw[ ] its essence from the collective bargaining agreement." *United Steelworkers of America v. Enter-*

*prise Wheel & Car Corp.*, 363 U.S. 593, 597, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960).

■ In cases such as this one which concern the interpretation of a collective bargaining agreement, "courts have no business overruling [the arbitrator] because their interpretation of the contract is different from his." *Id.* at 599, 80 S.Ct. 1358. However, an arbitrator may not "ignore[ ] the plain language of the contract," *Stead Motors of Walnut Creek v. Automotive Machinists Lodge No. 1173*, 886 F.2d 1200, 1206 n. 6 (9th Cir.1989) (en banc), by relying on an interpretation that is not "plausible," *United Food & Commercial Workers Union, Local 1119 v. United Markets, Inc.*, 784 F.2d 1413, 1415 (9th Cir.1986), and "instead follow[ ] his own whims and biases." *Garvey v. Roberts*, 203 F.3d 580, 588–89 (9th Cir.2000).[2] In such cases, the arbitral award will "fail[ ] to draw its essence from the collective bargaining agreement." *Stead Motors*, 886 F.2d at 1206 n. 6 (internal quotations omitted).

■ Similarly, an arbitrator has no authority to ignore the plain language of a collective bargaining agreement that limits the scope of his authority. Ordinarily, "[a]n arbitrator is 'not confined to the express terms of the contract' but may also consider the 'industrial common law' which 'is equally a part of the collective bargaining agreement although not expressed in it.'" *SFIC*, 103 F.3d at 925 (quoting *Federated Dep't Stores v. United Food & Commercial Workers Union, Local 1442*, 901 F.2d 1494, 1497 (9th Cir.1990)); *see also Enterprise Wheel*, 363 U.S. at 597, 80 S.Ct. 1358 (stating that an arbitrator may "look for guidance from many sources"). This is particularly true if the express terms of the agreement leave gaps that need to be filled and for "the vast array of

circumstances [the parties] have not considered or reduced to writing." *Stead*, 886 F.2d at 1205; *see e.g.*, *SFIC*, 103 F.3d at 925–26 (stating that an arbitrator may infer a "just cause" requirement into a collective bargaining agreement that is silent on the permissible grounds for discharge); *International Ass'n of Machinists v. San Diego Marine Constr. Corp.*, 620 F.2d 736, 738–39 (9th Cir.1980) (finding that collective bargaining agreement leaves task of defining "just cause" to the arbitrator). However, the parties may expressly limit the arbitrator's discretion or delegate to him only a fact-finding role. *See Misco*, 484 U.S. at 41, 108 S.Ct. 364.

■ We turn now to the question before us: whether the arbitrator's interpretation of the CBA was "plausible." The arbitrator ruled that Article 28, § 2(A) is not an exclusive list of cardinal infractions for which summary discharge without prior warning may be imposed. The flaw in this interpretation is that it ignores the other relevant CBA provisions. *Cf. United States Postal Svc. v. American Postal Workers Union*, 204 F.3d 523, 528 (4th Cir.2000) (vacating arbitral award in which the arbitrator relied on one provision of the agreement, but ignored another provision which limited his authority).

NMA Article 7 and the second clause of Western Supplement Article 28, Section 2 set out categorical and mandatory rules. Article 28, Section 2 states: "No employee(s) *shall* suffer ... discharge without the employee(s)' having been given a written warning notice ..." (emphasis added). NMA Article 7 states that "Except in cases involving cardinal infractions under the applicable Supplement ..., an employee to be discharged ... *shall* be allowed to remain on the job, without loss of pay

---

**2.** This is a rigorous, but not impossible, standard. *See United Markets*, 784 F.2d at 1415 (vacating arbitral award because the arbitrator did not attribute usual meaning to the words in the document); *Pacific Motor Trucking Co. v. Automotive Machinists Union*, 702 F.2d 176, 177 (9th Cir.1983) (vacating arbitral award because "[t]he arbitrator disregarded a specific contract provision to correct what he perceived as an injustice"); *Federated Employers of Nevada, Inc. v. Teamsters Local No. 631*, 600 F.2d 1263, 1264 (9th Cir.1979) (vacating arbitral award that "plainly violated the terms of the arbitration clause").

unless and until the discharge or suspension is sustained under the grievance procedure." (emphasis added). Section 2(A) carves out exceptions to these categorical restrictions on management prerogative.[3] Read together, these provisions unambiguously prohibit UPS from discharging an employee for a reason that is not one of the seven cardinal infractions unless the employee has received a warning notice and until the discharge has been sustained in arbitration. If an arbitrator were free to find other cardinal infractions based on standards of "just cause," the rigidly prohibitive language of Article 28 and Article 7 would serve no purpose.

The only plausible reading of the CBA is that, in an arbitration challenging a summary discharge, the arbitrator is limited to deciding the factual questions whether the employee (1) committed an enumerated cardinal infraction; and (2) received a warning in the preceding nine month period. If these predicate facts do not exist, an arbitrator may not uphold a discharge based on principles of "reasonableness" or "just cause."

■■■ UPS points to other arbitration awards interpreting the CBA's list of cardinal infractions as nonexclusive. However, there is an equally impressive record of arbitration awards interpreting the list as exclusive. Therefore, prior arbitration awards have not amended the CBA by establishing a clear-cut law of the shop. The result might be different in a case in which the CBA says one thing, and the law of the shop as established by prior arbitration decisions says something different. In that situation, despite the bargained-for language in the CBA, the parties might nonetheless have an understanding different from that expressed in the agreement. We need not address that situation here, however, because prior arbitration decisions, having gone both ways on the exclusivity question, have not given the relevant provisions of the CBA a fixed meaning. In the absence of clear-cut law of the shop to the contrary, the existence of some arbitration awards interpreting Article 28, § 2(A)'s list as nonexclusive cannot render plausible an otherwise implausible interpretation of the CBA.[4]

Finally, UPS argues that it is illogical to conclude that an employer would agree to a prohibition on summary termination of employees without warning with only seven exceptions: "Under the Union's interpretation, acts prohibited by federal and state law such as illegal sexual harass-

3. The parties agree that the "applicable Supplement" referred to in NMA Article 7 is the Western Supplement and that "cardinal infractions" are listed in Article 28, Section 2(A).

4. We emphasize that this case presents the exceptional situation in which the collective bargaining agreement contains precise, detailed language that leaves no room for the arbitrator to arrive at an alternative conclusion, especially in the absence of clear law of the shop to the contrary. In most cases, the collective bargaining agreement is a "skeletal, interstitial document," in which "the vast array of circumstances ... have not [been] considered or reduced to writing ...." *Stead Motors of Walnut Creek v. Automotive Machinists Lodge No. 1173*, 886 F.2d 1200, 1205 (9th Cir.1989) (en banc). The law of the shop plays a crucial role in interpreting the collective bargaining agreement in these situations. At the same time, we recognized in *Stead* that:

[t]he exception [to judicial deference to arbitrator's awards] is the case in which the arbitrator's award "fails to draw its essence" from the collective bargaining agreement. This term is reserved for those egregious cases in which a court determines that the arbitrator's award ignored the plain language of the contract, that he "manifestly disregarded" the contours of the bargain expressed in outline by the collective bargaining agreement. In such an instance, the court rules that the arbitrator's award represents an invalid exercise of the power the parties have entrusted to him.

*Id.* at 1206 n. 6. This case represents one such "egregious case" where the arbitrator ignored the plain language of the contract, and the law of the shop did not support his conclusion that the cardinal list of infractions was nonexclusive. This opinion is not meant to disturb in any way the role that the law of the shop plays in arbitration proceedings.

ment, terroristic threatening, and drug possession, could not be punished with anything more than a written warning." But Harris has not engaged in any illegal activity. If that case does arise, a court might consider refusing to enforce an arbitral award on the basis that "the contract as interpreted would violate 'some explicit public policy' that is 'well defined and dominant....'" *Misco*, 484 U.S. at 43, 108 S.Ct. 364 (quoting *W.R. Grace & Co. v. Local Union 759*, 461 U.S. 757, 766, 103 S.Ct. 2177, 76 L.Ed.2d 298 (1983)), though we express no opinion on such case at this time.

## III

We reverse the district court's order confirming the arbitration award, and remand so that the district court may vacate the arbitrator's award.

REVERSED AND REMANDED.