**HAWAII TEAMSTERS AND ALLIED WORKERS UNION, LOCAL 996, Petitioner–Appellant,**

v.

**UNITED PARCEL SERVICE, Respondent–Appellee.**

No. 99–17079.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 3, 2000

Filed March 7, 2001

David A. Rosenfeld and W. Daniel Boone, Van Bourg, Weinberg, Roger & Rosenfeld, Oakland, California, for the petitioner-appellant.

Ernest C. Moore III and Christine S.Y. Chun, Torkildson, Katz, Fonseca, Jaffe, Moore & Hethrington, Honolulu, Hawaii, for the respondent-appellee.

Before: PREGERSON, HAWKINS, and McKEOWN, Circuit Judges.

Opinion by Judge McKEOWN; Dissent by Judge PREGERSON

McKEOWN, Circuit Judge:

## ORDER

Judges Hawkins and McKeown vote to grant Appellee United Parcel Service, Inc.'s petition for rehearing. Judge Pregerson votes to deny the petition for rehearing. The opinion filed Sept. 6, 2000, amended Oct. 20, 2000 and reported at 229 F.3d 847 (9th Cir.2000) is hereby withdrawn.

## OPINION

■ This case stems from a union grievance over the termination of an employee who was purportedly insubordinate and verbally abusive to co-workers. A labor arbitrator upheld the termination, and the district court denied a petition to vacate his award. The only issue before us is whether the arbitrator " 'even arguably constru[ed] or appl[ied]' " the collective bargaining agreement that governed the employee's relationship with his employer, or, rather, was dispensing his " 'own notions of industrial justice.' " *E. Associated Coal Corp. v. United Mine Workers, Dist. 17,* 531 U.S. 57, ——, 121 S.Ct. 462, 466, 148 L.Ed.2d 354 (2000) (quoting *United Paperworkers v. Misco, Inc.,* 484 U.S. 29, 38, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987)). If the former, we must affirm the arbitrator's award; in case of the latter, we must reverse. We emphasize that our task is to determine *whether* the arbitrator interpreted the collective bargaining agreement, *not* whether he did so correctly. *See, e.g., Stead Motors v. Auto. Machinists Lodge No. 1173,* 886 F.2d 1200, 1204 (9th Cir.1989) (en banc) ("[W]e are bound—under all except the most limited circumstances—to defer to the decision of [the arbitrator], even if we believe that the decision finds the facts and states the law erroneously."). In view of our limited role, we affirm the district court's decision denying the petition to vacate the arbitration award.

I. BACKGROUND AND PROCEDURAL HISTORY

In September 1998, United Parcel Service, Inc. ("UPS") fired employee Carlos Harris for "insubordination and abusive conduct toward superiors and co-employees in violation of house rules." In response to a dispute over his paycheck, Harris became upset, vociferous, loud, and angry when conversing over the telephone with a payroll clerk. Because the clerk

did not know how to deal with Harris's anger, she transferred him to the Human Resources Director. Harris used obscenities and profanity in demanding his check from the Human Resources Director, who ordered Harris to stop swearing and told him, "the next time you swear at me, you will be terminated. Do you understand?" When Harris continued, the Human Resources Director terminated him on the spot for refusal to obey·a direct order from a supervisor and continued use of vulgar language. Prior to his termination, Harris did not receive a written warning notice, nor had he received a disciplinary warning in the nine-month period preceding his discharge. Before this incident, UPS had disciplined Harris on two occasions—in March 1996 and in September 1997—for using inappropriate or abusive language with his supervisors. The arbitrator characterized Harris's employment history as "stormy," labeled him "a provocateur extraordinaire," and noted that, in addition to these specific incidents, Harris had a number of customer complaints and run-ins with his supervisor, including alleged instances of verbal abuse, disrespectful conduct, and poor performance.

Harris is represented by Hawaii Teamsters and Allied Workers, Local 996 ("Local 996"). Local 996's collective bargaining relationship with UPS is governed by three agreements: (1) a National Master Agreement ("NMA") between UPS and the International Brotherhood of Teamsters, the international union with which Local 996 is affiliated; (2) the Western ,Region Supplemental Agreement ("Western Supplement") between UPS and the Western Conference of Teamsters; and (3) a Local Agreement between UPS and Local 996.[1]

The Local Agreement provides that "[a]ny case pertaining to a discharge or suspension shall be handled in accordance with Article 28, Section·2 of the Western Region Supplemental Agreement." Article 28, Section 2 of the Western Supplement regulates the conditions under which UPS may fire a bargaining unit employee:

Any case pertaining to a discharge or suspension shall be handled as follows:

No employee(s) shall suffer suspension or discharge without the employee(s) having been given a written warning notice wherein the facts forming the grounds for such warning notice are clearly set forth. The facts therein set forth must be of the same type as those upon which such suspension or discharge is founded.

(A) In cases of: (1) dishonesty; (2) drinking of alcoholic beverages while on duty; (3) recklessness resulting in a serious accident while on duty; (4) the carrying of unauthorized passengers; (5) unprovoked assault on an employee or a supervisory employee while on duty; (6) selling, transporting or uses of illegal narcotics while in the employment of the Employer; or (7) willful, wanton or malicious damage to the Employer's property, shall be dischargeable offenses without the necessity of a warning letter being in effect.

The seven specified reasons have been referred to as "cardinal infractions" and colloquially as the "cardinal sins." Section 2(B) of Article 28 permits the arbitrator to admit evidence of "any reason or reasons to substantiate unsatisfactory work performance arising out of circumstances which occurred during the nine (9) month period immediately preceding the date of discharge or suspension notice." Finally, Article 7 of the NMA limits UPS's power to fire summarily:

Except in cases involving cardinal infractions under the applicable Supplement, Rider or Addendum, an employee to be discharged or suspended shall be allowed to remain on the job, without loss of pay unless and until the dis-

---

1. We refer to these three documents collectively as the "collective bargaining agreement" or "CBA."

charge or suspension is sustained under the grievance procedure.

The NMA, Article 8, also sets out the scope of the arbitrator's authority:

The arbitrator shall have the authority to apply the provisions of this Agreement and to render a decision on any grievance coming before him/her but shall not have the authority to amend or modify this Agreement to establish new terms or conditions of employment.

Local 996 grieved Harris's termination before the Labor–Management Committee for the Western Region. When internal grievance procedures failed to resolve the dispute, Local 996 and UPS agreed to submit the case to binding arbitration. During the two-day arbitration hearing, Local 996 argued that (1) Harris's termination was prohibited by the CBA; and (2) even if Harris's termination was not prohibited by the CBA, UPS improperly terminated him prior to an arbitration decision on the matter. The arbitrator upheld Harris's discharge. After finding that Harris did not commit one of the seven cardinal infractions listed in Article 28, Section 2(A) of the Western Supplement, the arbitrator interpreted the CBA as permitting summary discharge without prior warning even if the employee did not commit one of the specified cardinal sins:

While the arbitrator is unable to find that this language used in that context rose to the level of an assault, it does rise to such insubordination and disrespect as to fall within industrially and socially disapproved conduct such as to authorize immediate dismissal without warning under Article 28. He holds that there are other cardinal sins perhaps not specifically named in this CBA article, which fall within the broad scope of insubordination and for which forthwith termination without benefit of warning, may legitimately be imposed.

The arbitrator concluded that Harris's conduct warranted summary dismissal without prior warning because his conduct violated industrial norms.

Local 996 filed an action in district court seeking to vacate the arbitral award. UPS opposed Local 996's motion to vacate and filed a motion to confirm the award. Finding that a plausible interpretation of the CBA supported the arbitral award, the district court confirmed the award:

The Court finds Article 28, Section 2 of the Western Region Supplemental Agreement is ambiguous. Article 28, Section 2 does not specify whether the list of offenses which may result in immediate dismissal is exclusive. The clause, for example, could specify "only if" the employee commits one of the following cardinal sins may the employer summarily terminate an employee.... The Court determines in reaching this decision, [the] Arbitrator interpreted the contract between the parties.

The Court finds [the] Arbitrator's interpretation of the list as non-exclusive is a "plausible" interpretation of the contract. The interpretation comports with decisions rendered by other arbitrators. Two arbitrators interpreted the identical contract as a non-exclusive list for termination offenses.... Several arbitrators have interpreted comparable lists of "cardinal sins" in nearly identical contracts as non-exclusive.

In this appeal, Local 996 challenges the confirmation of the award.

## II. STANDARD OF REVIEW

The outcome of this case rests on the limited scope of our review of an arbitral award. Therefore we think it useful to set out the standard of review in some detail.

We review de novo a district court's decision confirming an arbitration award. *See SFIC Props., Inc. v. Int'l Ass'n of Machinists & Aerospace Workers, Dist. Lodge 94,* 103 F.3d 923, 924 (9th Cir.1996). Our review of labor arbitration awards is, however, extremely deferential because "[c]ourts ... do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts." *Misco,* 484

U.S. at 38, 108 S.Ct. 364. We must confirm an arbitral award unless the arbitrator has "dispense[d] his own brand of industrial justice" by making an award that does not "draw[ ] its essence from the collective bargaining agreement." *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). This very limited scope of review makes sense in the context of collective bargaining: "Because the parties have contracted to have disputes settled by an arbitrator chosen by them rather than by a judge, it is the arbitrator's view of the facts and of the meaning of the contract that they have agreed to accept." *Misco*, 484 U.S. at 37–38, 108 S.Ct. 364.

Our task is, in essence, to review the procedural soundness of the arbitral decision, not its substantive merit. *See Coal*, 531 U.S. at –––– ––––, 121 S.Ct. at 466–67 ("the proper judicial approach to a labor arbitration award is to refuse to review the merits") (internal quotation marks and alteration omitted) (quoting *Enterprise Wheel*, 363 U.S. at 596, 80 S.Ct. 1358); Theodore J. St. Antoine, *Judicial Review of Labor Arbitration Awards: A Second Look at* Enterprise Wheel *and Its Progeny*, 75 Mich. L.Rev. 1137, 1160 (1977) ("A court asked to review or enforce an arbitral award can relax about the merits. By definition, the award is the parties' stipulated, adopted contract. The only conditions are procedural, not substantive—jurisdiction, authority, honesty, fairness, and basic rationality."). In cases such as this one which concern the interpretation of a collective bargaining agreement, "courts have no business overruling [the arbitrator] because their interpretation of the contract is different from his." *Enterprise Wheel*, 363 U.S. at 599, 80 S.Ct. 1358; *accord Coal*, 531 U.S. at ––––, 121 S.Ct. at 466, 121 S.Ct. 462 ("[T]he fact that 'a court is convinced [an arbitrator] committed serious error does not suffice to overturn his decision.'" (quoting *Misco*, 484 U.S. at 38, 108 S.Ct. 364)).

These strong admonitions steering us away from the merits and circumscribing our review do not mean that an arbitrator may "ignore[ ] the plain language of the contract," *Stead Motors*, 886 F.2d at 1205 n. 6, and "instead follow[ ] his own whims and biases," *Garvey v. Roberts*, 203 F.3d 580, 588–89 (9th Cir.2000). In such cases, the arbitral award will "fail[ ] to draw its essence from the collective bargaining agreement." *Stead Motors*, 886 F.2d at 1205 n. 6 (internal quotations omitted).

Similarly, an arbitrator has no authority to ignore the plain language of a collective bargaining agreement that limits the scope of his authority. Ordinarily, "[a]n arbitrator is 'not confined to the express terms of the contract' but may also consider the 'industrial common law' which 'is equally a part of the collective bargaining agreement although not expressed in it.'" *SFIC*, 103 F.3d at 925 (quoting *Federated Dep't Stores v. United Food & Commercial Workers Union, Local 1442*, 901 F.2d 1494, 1497 (9th Cir.1990)); *accord Enterprise Wheel*, 363 U.S. at 597, 80 S.Ct. 1358 (stating that an arbitrator may "look for guidance from many sources"). This is particularly true if the express terms of the agreement leave gaps that need to be filled, and "for the vast array of circumstances [the parties] have not considered or reduced to writing." *Stead Motors*, 886 F.2d at 1205; *see, e.g., SFIC*, 103 F.3d at 925–26 (stating that an arbitrator may infer a "just cause" requirement into a collective bargaining agreement that is silent on the issue); *Int'l Ass'n of Machinists v. San Diego Marine Constr. Corp.*, 620 F.2d 736, 738–39 (9th Cir.1980) (finding that the arbitrator properly determined whether conduct constituted "just cause" for firing where the collective bargaining did not specifically define "just cause").

## III. ANALYSIS

Fundamental to an understanding of our task here is the fact that we are to view an award not as a potentially erroneous result of the arbitrator's contract interpretation, but rather as the contract itself. The en banc court in *Stead Motors*

explained this rather unusual mode of analysis:

> Since the labor arbitrator is designed to function in essence as the parties' surrogate, he cannot "misinterpret" a collective bargaining agreement. As Professor St. Antoine observes, "[i]n the absence of fraud or an overreaching of authority on the part of the arbitrator, he is speaking for the parties, and his award *is* their contract." [St. Antoine, *supra,* at 1140]. Thus, what courts do when they review an arbitrator's award is more akin to the review of a contract than of the decision of an inferior tribunal: the award, just as a contract, is the expression of the parties' will and must be enforced as expressed unless illegal or otherwise void. Judicial "reinterpretation," no less than judicial reformation of a contract against the wishes of all the parties to it, is ordinarily an invalid exercise of our power.

886 F.2d at 1205–06 (footnote omitted). As the Supreme Court most recently put it, "the award is not distinguishable from the contractual agreement." *Coal,* 531 U.S. at ——, 121 S.Ct. at 467. UPS and Local 996 contracted for the arbitrator's award, for better or for worse; it is not up to us to reject his interpretation of the CBA simply because one of the parties has a complaint, however valid, that he arrived at that award through faulty interpretation of the CBA.

Throughout the litigation in federal court, Local 996 has consistently argued that the arbitrator erred in interpreting the relevant provisions of the CBA by concluding that the list of cardinal offenses contained in Article 28, Section 2(A) is not an exclusive list of the infractions for which summary discharge without prior warning may be imposed. There is much to be said, as a matter of contract interpretation, for Local 996's view of the arbitrator's decision. When read together, NMA Article 7 and the second clause of Western Supplement Article 28, Section 2 can arguably be construed as prohibiting UPS from discharging an employee for a reason that is not one of the seven cardinal infractions unless the employee has received a warning notice and until the discharge has been sustained in arbitration.

Local 996's straightjacket approach to contract interpretation would not, however, take into account other cognizable sources of federal labor law, such as the law of the shop, the industrial common law, and the like, nor would it appropriately recognize the role and decision of the skilled labor arbitrator. For, even if we were to disagree with the arbitrator's approach, it is not our task to intrude into the arbitration process and substitute our judgment for his. *See Enterprise Wheel,* 363 U.S. at 599, 80 S.Ct. 1358; *Stead Motors,* 886 F.2d at 1204; *San Francisco–Oakland Newspaper Guild v. Tribune Publ'g Co.,* 407 F.2d 1327, 1327 (9th Cir. 1969). Our role here is severely limited compared to our routine de novo review of a district court's interpretation of contract language. *See Stead Motors,* 886 F.2d at 1205 (referring to "the unique character of an arbitrator's function and the nearly unparalleled degree of deference we afford his decisions."); *compare Mendler v. Winterland Prod., Ltd.,* 207 F.3d 1119, 1121 (9th Cir.2000) ("Contract interpretation is a question of law we review de novo.") (reviewing district court's interpretation of a contract), *with Enterprise Wheel,* 363 U.S. at 599, 80 S.Ct. 1358 ("courts have no business overruling [the arbitrator] because their interpretation of the contract is different from his.").

To be sure, an arbitrator's award is not bulletproof. In *Garvey,* we summarized the rare circumstances where we may upset an arbitrator's award:

> The general rule [of refusal to review the merits of an arbitral award], the [Supreme] Court noted, is inapplicable when an arbitrator "dispense[s] his own brand of industrial justice." [*Enterprise Wheel,*] 363 U.S. at 597[, 80 S.Ct. 1358]. In those instances—instances in which, by definition, an arbitrator's award draws no legitimacy from the collective bargaining agreement—a court has no choice but to refuse enforcement of the award. Over the years, we have formu-

lated this exception in various ways. *See, e.g., SFIC Properties, Inc. v. Int'l Assn. of Machinists & Aerospace Workers, Dist. Lodge 94,* 103 F.3d 923, 925 (9th Cir.1996) (stating that the exception applies "when the award does not 'draw its essence from the collective bargaining agreement'"); *Sheet Metal Workers v. Arizona Mechanical & Stainless, Inc.,* 863 F.2d 647, 653 (9th Cir.1988) (suggesting that the exception applies where the award does not "represent[ ] a plausible interpretation of the contract").

203 F.3d at 588 (footnote omitted). Local 996 would have us read the award as having failed to "draw its essence from the collective bargaining agreement," and one where the arbitrator "dispensed his own brand of industrial justice." It argues, in essence, that by erring on the issue of whether the list of cardinal sins is exclusive, the arbitrator ignored the language of the CBA and his mandate to interpret it. We must take care, however, not to allow these two "cryptic phrases," *Stead Motors,* 886 F.2d at 1208 n. 8, to open a back door to judicial review of the merits of an arbitral award. *See id.* at 1204 ("[T]here may be a tendency for judges, often with the most unobjectionable intentions, to exceed the permissible scope of review and to reform awards in our own image of the equities or the law."). Local 996's position would result in the exception swallowing the rule; any time an arbitrator arrived at a result that a party believes to be the result of faulty contract interpretation, it could obtain judicial review of the merits by phrasing its disagreement with the arbitrator's award as a complaint that he disregarded the contract and "dispensed his own brand of industrial justice." But the fact that an arbitrator arguably misinterpreted a contract does not mean that he did not engage in the act of interpreting it. As bears repeating, "so far as the arbitrator's decision *concerns* construction of the

contract, the courts have no business overruling him because their interpretation of the contract is different from his." *Enterprise Wheel,* 363 U.S. at 599 (emphasis added).

Local 996 attempts to rely on language in some of our cases suggesting that a court may vacate an arbitral award upon a determination that it does not stem from a "plausible" reading of the CBA. *See, e.g., Sheet Metal Workers Int'l Assoc. v. Arizona Mech. & Stainless, Inc.,* 863 F.2d 647, 653 (9th Cir.1988); *United Food & Commercial Workers Union, Local 1119 v. United Mkts., Inc.,* 784 F.2d 1413, 1415 (9th Cir.1986). Local 996 asserts that an interpretation of the CBA determining that the list of cardinal sins is not exclusive is not plausible. Recent cases, however, have made clear that the "plausibility" inquiry does not represent an independent avenue for a merits-based attack on an arbitral award. Rather, it is nothing more than another way of formulating the old rule of *Enterprise Wheel* that an arbitrator may not "dispense his own brand of industrial justice." 363 U.S. at 597, 80 S.Ct. 1358. As we explained in *Garvey,*

> Although the formulations have been various, the underlying rule has remained unchanged. We overturn an arbitrator's award only when it is clear from the arbitral opinion or award that the arbitrator did not base his decision on an interpretation of the collective bargaining agreement or that he disregarded what the parties put before him and instead followed his own whims or biases.

203 F.3d at 588–89.

The conclusion that the arbitrator in the instant case was not acting on whim, but was seeking to give effect to the CBA, is further supported by reference to other arbitration awards interpreting the list of cardinal infractions as nonexclusive.[2] At-

---

2. The arbitrator made specific reference to another arbitrator's conclusion that the cardinal sin listing is not exclusive or exhaustive. *See Teamsters Local 597 v. United Parcel Serv., Inc.,* slip op. at 12 (1998) (Cochran, Arb.)

(Grievance of Boise). In addition, the district court noted the decisions of two other arbitrators who interpreted the identical contract and reached the same decision. Finally, UPS argues that "two decades of arbitral decisions

tention to such "law of the shop" is a routine and fully appropriate mode of analysis for labor arbitrators. As we stated in *McKinney v. Emery Air Freight Corp.*, 954 F.2d 590, 595 (9th Cir.1992),

> All of these components—statutes, case decisions, principles of contract law, practices, assumptions, understandings, the common law of the shop and "the industrial common law"—are part of what is known as the federal labor law. Moreover, it is the general understanding, indeed it is the keystone of the national labor policy announced in the *Steelworkers* trilogy, that skilled labor arbitrators, rather than judges, are better positioned and equipped to identify and to apply the common law of the shop.

(footnote omitted).

In sum, Local 996's disagreement with the arbitrator's decision is fundamentally a dispute about the merits; it is not about the award's basic procedural fairness. We cannot conclude in this case that the arbitrator acted on a whim or that he was out on a limb meting out his own version of industrial justice. Because the arbitrator drew the essence of his award from the collective bargaining agreement, as he was required to do, we have no grounds to upset his conclusions.

We decline to opine whether the arbitrator "misinterpreted" the CBA; that is simply not our role. Recognizing the extreme deference owed to a labor arbitrator's decision, we affirm the district court's order confirming his award.

**AFFIRMED.**

PREGERSON, Circuit Judge, dissenting:

The only issue in this case is whether the arbitrator's award in favor of UPS is based on a plausible interpretation of the collective bargaining agreement. The parties agree that Harris did not commit one of the seven cardinal infractions listed in Article 28, Section 2(A) of the Western Supplement. They also agree that Harris did not receive a warning notice in the nine-month period preceding his dismissal. Thus, the issue is whether the CBA may be plausibly interpreted as permitting UPS to discharge an employee who has not committed one of the seven specified cardinal infractions (1) if the employee has not received a warning in the preceding nine months and (2) before the discharge has been sustained under the grievance procedure. Because I believe that no plausible interpretation of the CBA permits UPS to do so, I respectfully dissent.

I agree with the majority that our review of labor arbitration awards is extremely deferential. "Courts ... do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts." *United Paperworkers Int'l Union v. Misco*, 484 U.S. 29, 38, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987). At the same time, there are some narrow instances in which an arbitral award is not entitled to deference. For example, we should not confirm an arbitral award when the arbitrator has "dispense[d] his own brand of industrial justice" by making an award that does not "draw[ ] its essence from the collective bargaining agreement." *United Steelworkers of America v. Enterprise Wheel &*

---

interpreting the cardinal sin provision support this reading of the CBA," and brings to our attention the most recent arbitral decision that is in accord, *International Brotherhood of Teamsters, Local 404 v. United Parcel Serv., Inc.*, No. 404–03–95 (Jan. 26, 2001) (Cochran, Arb.) (Grievance of Moody).

We reject the dissent's suggestion that we have crafted a per se rule that "the presence

of conflicting arbitral awards will always insulate any given award from judicial review." *See* Dissent at 2877. We have done nothing more than restate the well-established rule that a labor arbitrator's interpretation of a CBA may be informed by reference to the law of the shop.

*Car Corp.,* 363 U.S. 593, 597, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960).

In cases such as this one which concern the interpretation of a collective bargaining agreement, "courts have no business overruling [the arbitrator] because their interpretation of the contract is different from his." *Id.* at 599, 80 S.Ct. 1358. However, an arbitrator may not "ignore[ ] the plain language of the contract," *Stead Motors of Walnut Creek v. Automotive Machinists Lodge No. 1173,* 886 F.2d 1200, 1206 n. 6 (9th Cir.1989) (en banc), by relying on an interpretation that is not "plausible," *United Food & Commercial Workers Union, Local 1119 v. United Markets, Inc.,* 784 F.2d 1413, 1415 (9th Cir.1986), and "instead follow[ ] his own whims and biases." *Garvey v. Roberts,* 203 F.3d 580, 588–89 (9th Cir.2000).[1] In such cases, the arbitral award will "fail[ ] to draw its essence from the collective bargaining agreement." *Stead Motors,* 886 F.2d at 1206 n. 6 (internal quotations omitted).

Similarly, an arbitrator has no authority to ignore the plain language of a collective bargaining agreement that limits the scope of his authority. As the majority notes, "[a]n arbitrator [ordinarily] is 'not confined to the express terms of the contract' but may also consider the 'industrial common law' which 'is equally a part of the collective bargaining agreement although not expressed in it.' " *SFIC,* 103 F.3d at 925 (quoting *Federated Dep't Stores v. United Food & Commercial Workers Union, Local 1442,* 901 F.2d 1494, 1497 (9th Cir. 1990)). However, the parties may expressly limit the arbitrator's discretion or delegate to him only a fact-finding role. *See Misco,* 484 U.S. at 41, 108 S.Ct. 364.

In this case, the arbitrator ruled that Article 28, § 2(A) is not an exclusive list of cardinal infractions for which summary discharge without prior warning may be imposed. The flaw in this interpretation is that it ignores the other relevant CBA provisions. *Cf. United States Postal Svc. v. American Postal Workers Union,* 204 F.3d 523, 528 (4th Cir.2000) (vacating arbitral award in which the arbitrator relied on one provision of the agreement, but ignored another provision which limited his authority).

The National Master Agreement Article 7 and the second clause of Western Supplement Article 28, Section 2 set out *categorical* and *mandatory* rules. Article 28, Section 2 states: "No employee(s) *shall* suffer ... discharge without the employee(s) having been given a written warning notice ...." (emphasis added). NMA Article 7 states that "Except in cases involving cardinal infractions under the applicable Supplement ..., an employee to be discharged ... *shall* be allowed to remain on the job, without loss of pay unless and until the discharge or suspension is sustained under the grievance procedure." (emphasis added). Section 2(A) carves out exceptions to these categorical restrictions on management prerogative. Read together, these provisions unambiguously prohibit UPS from discharging an employee for a reason that is not one of the seven cardinal infractions unless the employee has received a warning notice and until the discharge has been sustained in arbitration. If an arbitrator were free to find other cardinal infractions based on standards of "just cause," the rigidly prohibitive language of Article 28 and Article 7 would serve no purpose.

The only plausible reading of the CBA is that, in an arbitration challenging a summary discharge, the arbitrator is limited to deciding the factual questions whether the employee (1) committed an enumerated cardinal infraction; and (2) received a

---

1. This is a rigorous, but not impossible, standard. *See United Markets,* 784 F.2d at 1415 (vacating arbitral award because the arbitrator did not attribute usual meaning to the words in the document); *Pacific Motor Trucking Co. v. Automotive Machinists Union,* 702 F.2d 176, 177 (9th Cir.1983) (vacating arbitral award because "[t]he arbitrator disregarded a specific contract provision to correct what he perceived as an injustice"); *Federated Employers of Nevada, Inc. v. Teamsters Local No. 631,* 600 F.2d 1263, 1264 (9th Cir.1979) (vacating arbitral award that "plainly violated the terms of the arbitration clause").

warning in the preceding nine month period. If these predicate facts do not exist, an arbitrator may not uphold a discharge based on principles of "reasonableness" or "just cause." The arbitrator in this case exceeded the limited fact-finding role that the parties bargained for and set forth in detail in the CBA. Therefore, "the arbitrator's award represents an invalid exercise of the power the parties have entrusted to him." *Stead,* 886 F.2d at 1206 n. 6.

The majority gives weight to UPS's ability to point to other arbitration awards interpreting the CBA's list of cardinal infractions as nonexclusive. However, there is an equally impressive record of arbitration awards interpreting the list as exclusive. The existence of some arbitration awards interpreting Article 28, § 2(A)'s list as nonexclusive should not render plausible an otherwise implausible interpretation of the CBA.

Moreover, under the majority's reasoning, the presence of conflicting arbitral awards will *always* insulate any given award from judicial review. While the presence of conflicting arbitral awards should be relevant to whether a given award is based on a plausible interpretation of a collective bargaining agreement, I reject the suggestion implicit in the majority opinion that we adopt a *per se* rule that a court may never vacate an arbitral award where the arbitrator's interpretation of the collective bargaining agreement is supported by a prior award.

Because I believe that the arbitrator's award is not based on a plausible interpretation of the CBA, I respectfully dissent.