**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

U.A. LOCAL 342 APPRENTICESHIP &
TRAINING TRUST; LARRY BLEVINS,
Trustee,

   *Plaintiffs-Appellees,*

    v.

BABCOCK & WILCOX CONSTRUCTION
CO., INC.,

   *Defendant-Appellant.*

No. 03-16018

D.C. Nos.
CV-01-04327-TEH
CV-02-00098-TEH

OPINION

Appeal from the United States District Court
for the Northern District of California
Thelton E. Henderson, District Judge, Presiding

Argued and Submitted
December 9, 2004—San Francisco, California

Filed February 1, 2005

Before: Alex Kozinski, William A. Fletcher and
Jay S. Bybee, Circuit Judges.

Opinion by Judge Kozinski

1305

**COUNSEL**

Nancy Winkelman, Philadelphia, Pennsylvania; Stephen H. Dye, Schnader Harrison Segal & Lewis LLP, San Francisco, California, for the defendant-appellant.

William J. Flynn, Neyhart, Anderson, Freitas, Flynn & Grosboll, San Francisco, California, for the plaintiffs-appellees.

**OPINION**

KOZINSKI, Circuit Judge:

> Seven and a half cents doesn't buy a helluva lot,
> Seven and a half cents doesn't mean a thing,
> But give it to me ev'ry hour,
> Forty hours ev'ry week,
> That's enough for me to be
> Livin' like a king.[1]

**Facts**

Babcock & Wilcox Construction Co. entered into the National Industrial Maintenance Agreement ("NIMA"), a collective bargaining agreement, with the United Association of

---

[1]Richard Adler & Jerry Ross, *Seven and a Half Cents*, *in The Pajama Game* (1954).

Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry of the United States and Canada ("U.A."). Whenever local U.A. unions work on projects that fall within the scope of the NIMA, the terms of any local labor agreements to which the unions may also be parties apply only to the extent that the NIMA incorporates them.

One area in which the NIMA refers to local agreements is benefit fund contribution obligations. For example, the NIMA incorporates required apprentice training fund contributions:

> Welfare Funds, Pension Funds, Apprentice Training Funds and other monetary funds called for in the Local Union Labor Agreement shall be paid in accordance with the Local Union Labor Agreement . . . .

NIMA, art. IX ¶ 34. Industry promotion fund contributions, however, are not mandatory:

> Industry Advancement or Promotion Funds called for in the Local Union Labor Agreement may be paid at the discretion of the Employer.

Art. IX ¶ 36.

The local agreement at issue here provides for a variety of fund contributions, including 75 cents per hour of work to the U.A. Local No. 342 apprentice training fund and 25 cents to industry promotion funds. It also requires employers who do not contribute to industry promotion funds to pay an equal amount into the apprentice training fund. *See* Master Labor Agreement Between Local Union 342 and Northern California Mechanical Contractors Association ("local agreement"), art. X ¶ 81(E), (I), (J).

Babcock properly exercised its discretion under article IX ¶ 36 of the NIMA and declined to pay the 25 cents into the

industry promotion funds. However, it did not contribute an equal amount into the apprentice training fund, as required by the local agreement. The apprentice training fund sued. The district court granted the fund's motion for summary judgment and referred the remaining matters, including damages, to a magistrate judge. The parties agreed to a stipulated judgment in conformity with the district court's order. Babcock appeals.

## Discussion

**1.** Stipulated judgments are usually not appealable. *See Slaven* v. *Am. Trading Transp. Co., Inc.*, 146 F.3d 1066, 1070 (9th Cir. 1998). However, both parties agree that the purpose of the stipulated judgment was to set an amount of damages to facilitate Babcock's appeal. We therefore have appellate jurisdiction because it is clear that Babcock "intended to preserve its right of appeal." *See Christian Sci. Reading Room Jointly Maintained* v. *City & County of S.F.*, 784 F.2d 1010, 1017 (9th Cir. 1986).

**[1] 2.** The text of the NIMA supports the fund's position. The local agreement requires employers who do not pay a quarter into the industry promotion funds to turn that quarter over to the apprentice training fund. Babcock's choice not to contribute to the industry promotion funds—a choice protected by the NIMA, which makes such contributions discretionary—thus created a requirement under the local labor agreement to contribute to the apprentice training fund. That requirement is incorporated into the NIMA, which provides that "Apprentice Training Funds . . . shall be paid in accordance with the Local Union Labor Agreement." Art. IX ¶ 34.

**[2] 3.** Babcock suggests that we defer to the judgment of the NIMA Policy Committee, which considered this same question and concluded that requiring employers to pay into apprentice trust funds as an alternative to paying into industry

promotion funds would be "contrary to the spirit and intent" of the NIMA. This is not, strictly speaking, a statement that the NIMA does not require such contributions. However, even if we were to interpret it as such, the Policy Committee's determination is not entitled to deference in this case.

**[3]** One function of the Policy Committee is to adjudicate grievances between parties. Art. VI ¶ 28. We generally afford great deference to the decisions of arbitrators in disputes between parties to a collective bargaining agreement who, after all, agreed to the arbitrator's authority. *See, e.g.*, *Grammer* v. *Artists Agency*, 287 F.3d 886, 890-91 (9th Cir. 2002); *Haw. Teamsters & Allied Workers Union, Local 996* v. *UPS*, 241 F.3d 1177, 1183 (9th Cir. 2001). But appellees, as non-parties to the agreement, have never agreed to submit to the decisions of the Policy Committee.

**[4]** Even without their consent, appellees could nonetheless be required, as third-party beneficiaries of the NIMA, to go to arbitration, in which case the Policy Committee's interpretation of the contract would be binding on them. But an intent to subject third-party beneficiaries to arbitration is not presumed; it must appear from "the language of the contract, or the circumstances under which it was executed." *See Schneider Moving & Storage Co.* v. *Robbins*, 466 U.S. 364, 371 (1984). No such intent appears here: The NIMA does not give the Policy Committee authority to interpret the NIMA in the context of disputes with non-parties.[2]

We don't doubt the benefits of delegating interpretive power over a complex collective bargaining agreement to an expert body in the way Babcock suggests, but the NIMA here didn't actually grant the Policy Committee such power.

**AFFIRMED.**

---

[2]We do not give any weight to the Policy Committee secretary's statement that "[t]he Committee has exclusive authority to administer and interpret" the NIMA. This is a legal opinion about the interpretation of a contract, not a fact.